Yevcak Unemployment Compensation Case.
Lehigh Navigation Coal Co., Inc., Appellant, *v.*
Unemployment Compensation Board of Review.

70

Argued March 16, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and ERVIN, JJ. (WOODSIDE, J., absent).

*Irving R. Segal,* with him *J. B. Millard Tyson* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY HIRT, J., July 13, 1954:

This is an appeal by Lehigh Navigation Coal Company, Incorporated, (hereinafter referred to as Lehigh) from an order of the Unemployment Compensation Board of Review, allowing a claim credit as to Andrew J. Yevcak for the week ended June 4, 1952. By stipulation it is agreed that the appeal will decide the claims of 75 other employes of Lehigh for unemployment compensation for the same period.

Lehigh conducts deep mining operations on its extensive properties in the vicinity of Lansford and Tamaqua, Pennsylvania. The claimants, all of whom worked for Lehigh in its deep mines, were members of either Local Union No. 1738 or Local Union No. 1571 of United Mine Workers of America. Lehigh's product for the market, as processed at the breaker, is a mixture of deep mined, with strip mined coal all of which is produced on the above properties. On April 23, 1951, Lehigh entered into a written contract with Winton Coal

Mining Company, Inc., a strip mining contractor (here-inafter referred to as Winton), under which Winton set up a complete stripping plant on Lehigh's property. Winton performed the stripping operations entirely with its own employes and, using its own equipment, was paid the contract price on a unit basis for the strip mined coal delivered. All of Winton's employes were members of Local No. 4004 of the United Mine Work-ers of America which was an autonomous local sepa-rate and distinct from the local unions of the deep mine workers. On or about May 27, 1952, the employes of Winton had a grievance against their employer and to induce a settlement of it favorable to them, they then voted a strike "holiday" to extend from May 28 to June 3, 1952, inclusive. As a result of the strike the stripping operation was suspended and no stripped coal was pro-duced during that period. When delivery of strip mined coal was interrupted, Lehigh closed its operations in its deep mine operations, at Lansford and Tamaqua, for that reason alone, and laid off the claimants for the duration of the strike. About 30% of the raw coal pro-cessed by the Lansford and Tamaqua colleries comes from Lehigh's stripping operations. It costs less to pro-duce strip mined coal and Lehigh suspended operations when the employes of Winton struck because it was economically unprofitable to market deep mined coal unmixed with the cheaper product. During the strip-ping strike there were continuous negotiations between Lehigh's management and a Mine Committee repre-senting all union members throughout The Panther Valley where Lehigh operates. But all efforts of the committee to persuade the officers of Local 4004 to call off the strike, by Winton's employes were unsuccessful.

It is the contention of appellant that claimant's un-employment was due to a labor dispute at the "factory, establishment or other premises" of Lehigh at which

he was last employed and that he therefore is ineligible for compensation. The sole question in this appeal therefore is whether the labor dispute between the strip miners and Winton amounted, in law under the circumstances, to a dispute between them and Lehigh which under §402(d) of the Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §802, disqualified claimants from compensation. There was functional integration in the operation of the strip mine with that of the deep mines in the mingling of the products of both for the market. But the labor dispute cannot be extended from the strippings to the place where claimants were employed unless the striking workmen in reality were employes of Lehigh. The ultimate decisive question therefore is whether Winton was an independent contractor.

The question involves a construction of the contract between Lehigh and Winton. By its terms Winton was obliged to furnish complete stripping plant and equipment and appliances as well as all labor supervisors necessary for excavating and removing all rock and overburden to designated dump sites and to excavate and load all coal acceptable to Lehigh "all in skillful and workmanlike manner to the satisfaction of [Lehigh's] Engineer." Winton also agreed to erect all necessary buildings and to construct additional roads necessary to the stripping operation. Beginning with April 9, 1951, Winton was obliged to "employ as many men and shifts in overburden removal consistent with the requirements necessary to furnish an average of 50 mine cars of coal on each day worked by Tamaqua Colliery"; the coal delivered to be "reasonably free from black dirt, overburden rock and undesirable material." Lehigh reserved the right "to reject any part of the coal material which is not suitable." Winton agreed "to pay all labor engaged in the performance of the work . . . at

a rate or scale of wages satisfactory" to Lehigh to conform substantially with "rates paid for similar work by other contractors in the Panther Valley region . . ." The contract further provided that Winton shall permit Lehigh's "Engineer and all persons appointed by him to visit and inspect the work or any part thereof, at all times and places during the progress of same, and shall provide sufficient, safe and proper facilities for such inspection." Under the contract Winton agreed to procure workmen's compensation coverage at its own expense and to pay and deduct from wages paid by it, all taxes imposed by Federal or State laws. In full payment of the obligations assumed, Winton under the contract was to be paid at the rate of $13.50 for each mine car of acceptable coal delivered. The contract in other respects defined in detail the reciprocal duties to be observed by the contracting parties.

The fact that the production of coal by the process of stripping was governed by a contract does not necessarily characterize Winton as an independent contractor. But it is persuasive of that conclusion especially since under the contract Winton was paid at a unit price per ton of coal delivered. In *Healey v. Carey, Baxter & Kennedy, Inc.*, 144 Pa. Superior Ct. 500, 19 A. 2d 852, we stated the principles applicable in Workmen's Compensation cases, which have equal validity here, thus: " 'The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done': McColligan v. Penna. R. R. Co., 214 Pa. 229, 63 A. 792. On the other hand, where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing

the relation of contractee and contractor and not that of master and servant. Smith v. State Workmen's Ins. Fund, 262 Pa. 286, 105 A. 90; Colleoni v. Delaware & Hudson Co., 274 Pa. 319, 118 A. 248; Simonton v. Morton, 275 Pa. 562, 119 A. 732. The distinguishing criterion is the right to control the means of accomplishing the result. 'Where control is not reserved over the means, the relationship is that of independent contractor, and conversely where such control is reserved, the relationship is that of servant or employee' ", citing cases.

It is clear that the contract in this case provided for nothing more than supervision of the stripping operations by Lehigh to insure the production of stripped coal suitable for the market in the mixed product. The following from the opinion in the *Healey* case supra, p. 505, therefore is pertinent: "Whatever supervision of the contractor was required to co-ordinate two phases of work necessary to the accomplishment of a definite result was not such control over the manner of performance as to raise the relation of master and servant by implication, for cooperation in this respect was within the contemplation of the parties as necessary to the performance of the contract".

Based upon findings from the record in this case, the Board of Review concluded: "We believe that under the terms of the aforesaid contract the conclusion is inescapable that the stripping miners are employes of Winton and, as we have found, the employes of the stripping contractors directed their strike against their employer, Winton, not Lehigh. Under the record in this case it is clear that the claimants, employes of Lehigh, had no dispute with their employer, instituted no work stoppage, nor participated therein; therefore the labor dispute Section 402(d) of the Act is not applicable and since the claimants meet all the qualifications of

Section 401 of the Act [43 PS §801] they are eligible for benefits."

We are in agreement with these conclusions.

Order affirmed.

GUNTHER J., dissents.