ARMSTRONG ET AL., APPELLANTS, *v.* PROPHET FOODS CO., ET AL., APPELLEES.

(No. 44714—Decided February 23, 1972.)

Common Pleas Court of Richland County.

*Messrs. Clayman, Jaffy & Taylor,* for appellants.
*Mr. William J. Brown,* attorney general, for appellees.

MAYER, J. Denver Armstrong and some 19 other claimants have appealed from a decision of the Board of Review, Ohio Bureau of Employment Services dated June 30, 1971. This appeal is under R. C. 4141.28 (O) from the decision which in effect disallowed claimants' claims for benefits on the basis that their unemployment was due to a labor dispute.

General Motors Corporation owned and operated one of its Fisher Body Plants near Mansfield and the production workers were members of a local union of United Auto Workers. A labor dispute developed between the union

members and General Motors and this culminated in a strike by said local union starting on or about September 15, 1970, and continuing until on or about November 22, 1970. At the commencement thereof, picket lines were set up around the entrance to the plant.

Now there existed at said times at said plant, some two cafeterias and one dining room, plus the installation adjacent thereto or throughout the plant, of some 80 vending machines; the cafeterias, dining room and vending machines were provided for and used by the production workers and other workers for the General Motors Corporation. Prophet Foods Company handled the cafeterias, dining room, and machines, under an agreement with General Motors. Prophet Foods Company employees had their union, Local No. 10, Hotel, Motel and Restaurant employees; but the employees working under Mr. Cline, vending machine manager, were members of local 410, Vending Employees Service Union.

When the picket lines were set up the Prophet Foods Company employees were thrown out of work. The manager of the vending machines continued to work to provide food for executives and office personnel of General Motors, who remained on the job during the strike.

The court has carefully considered the entire record herein and the oral arguments and briefs of respective counsel.

Now, Prophet Foods is a totally separate corporation from General Motors, and no one at General Motors either controls or has the right to control the activity of any employee of Prophet Foods. Prophet Foods had its own collective bargaining agreement with Prophet Foods employees, and this was in full force during all times involved herein. At none of the times involved herein was there any labor dispute between Prophet Foods and any of its employees. At no time was there any labor dispute between employees of Prophet Foods and General Motors or any other employer.

It was after the labor dispute started at General Motors that appellants were laid off by Prophet Foods, since there was no work available—no customers to serve.

On April 5, 1971, the referee denied said claimed rights to receive unemployment compensation benefits because their unemployment was due to what he termed the dispute between the General Motors Corporation and the United Auto Workers. At page 4 of his decision he said, "* * * the unemployment in issue here * * * resulted from the General Motors strike." A further paragraph reads: "General Motors did not operate the premises used by Prophet Foods Company at the Mansfield plant of General Motors. Prophet Foods Company operated those premises."

R. C. 4141.29 (D) (1) (a), provides:

"(D) Notwithstanding division (A) of this Section, no individual may serve a waiting period or be paid benefits under the following conditions: (1) For any week with respect to which the administrator finds that: (a) His unemployment was *due to a labor dispute* other than a lockout *at* any *factory*, establishment, or other *premises* located in this or any other state *owned or operated by the employer by which he is or was last employed*; and for so long as his unemployment is due to such labor dispute. * * *" (Emphasis by the court.)

The court notes that before an amendment to the law in 1963 the statutory disqualification in effect then provided:

"Lost his employment or has left his employment by reason of a labor dispute * * * *at* the factory, establishment, or other premises *at* which he was employed." (Emphasis by the court.)

It appears a dispute "at the factory, establishment or other premises" under the old law would have involved all employees of any employer. But the law was changed. This change was effective October 20, 1963. It will be noted that a word was stricken and the phrase now reads "owned or operated by the employer by which" he was employed. Under the present law, status of the employe takes on a new significance. If an employer in a labor dispute thus shuts down or reduces operations at another location it owns or operates, then its employees at such other location would be disqualified. If the employer is in a labor

dispute resulting in a supplier receiving no orders and thus has to lay off people then those people are not disqualified. Their employer, the supplier, is not in the labor dispute. He is a separate employer. From the evidence in the instant case, the referee initially adopted the two-unit theory with relationship between Prophet Foods and General Motors. The plant was not viewed as a single unit. According to the theory adopted there are two distinct premises within the gates at General Motors, their manufacturing facility and the second which is the cafeteria operations by Prophet Foods.

It naturally follows under the theory adopted, it must be accepted that a labor dispute at the establishment or premises that is operated by General Motors is not a labor dispute at the establishment or premises that is operated by Prophet Foods. Under the statute appellants would be entitled to receive unemployment compensation unless their unemployment was due to a labor dispute at the premises operated by Prophet Foods. The referee expressly found that General Motors did not operate the premises used by Prophet and that the unemployment of appellants herein was due solely to the labor dispute at General Motors. There was no labor dispute at the food operation business of Prophet Foods. Further, the Unemployment Compensation Act must be liberally construed. A referee cannot broadly construe a proviso or exception which restricts the general scope of the Act. Such must be strictly construed. *Canadian Pacific R. R.* v. *United States* (9th Cir.) 78 F. 2d 831 at 834. Also see *Phillips Inc.* v. *Walling*, 324 U. S. 490.

The courts in other states have not disqualified claims where somebody else's employer has a labor dispute with his employees. See the case of *Lehigh Navigation Coal Co., Inc.,* v. *Board of Review* (1954), 176 Pa. Super. 69, 106 A. 2d 919. For an interesting holding in a Minnesota case see *Koll* v. *Egekvist Bakeries, Inc.*, 259 Minn. 287, 107 N. W. 2d 373.

The decision denying benefits should be reversed for the reason it is unlawful, unreasonable and against the

manifest weight of the evidence. In my opinion the interpretation given to R. C. 4141.29 (D) (1) (a) is, in view of the Fourteenth Amendment of the United States Constitution, denying equal protection of the laws to appellants herein.

Ordinarily an employee can't receive unemployment compensation if unemployment results from a labor dispute of the employer and the employees of the same company. If employees under such circumstances could rely on unemployment compensation, it would place the employers at a disadvantage. But in our case at hand these workers are mere victims of the circumstances, the type of situation prompting the adoption of unemployment competition laws for relief.

The decision of the Board of Review denying appellants compensation as prayed for is unlawful, unreasonable and contrary to the manifest weight of the evidence and is hereby reversed.

*Judgment for plaintiffs.*