## ALICE J. KOLL AND OTHERS v. EGEKVIST BAKERIES, INC. FRANK T. STARKEY, COMMISSIONER OF DEPARTMENT OF EMPLOYMENT SECURITY, RESPONDENT.

107 N. W. (2d) 373.

January 13, 1961—No. 38,042.

*Johnson, Eastlund & Gubbins,* for relator.

*Thomas O. Kachelmacher* and *Gerald B. Forrette,* for respondent employees.

*Walter F. Mondale,* Attorney General, and *Joseph A. Coduti,* Assistant Attorney General, for respondent commissioner.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the Department of Employment Security.

Egekvist Bakeries, Inc., relator, is engaged in the operation of a retail bakery business with its baking plant and principal place of business in Minneapolis. It sells bakery and candy products at sixty retail bakery stores located in Minneapolis and St. Paul and their sur-

rounding suburbs. Fifteen of the stores are operated under relator's own name. Two of these are located in supermarkets and operated by relator's employees, who collect for purchases of the bakery goods. The balance are leased areas in various supermarkets, operated by employees of relator, the rent being measured by a percentage of gross sales. In the latter stores the bakery goods are paid for at the checkout stands operated by the supermarkets.

The owners and operators of a large number of supermarkets in the Minneapolis area had collective bargaining agreements for a 2-year period with the Amalgamated Meat Cutters and Butcher Workmen of America, Local 653, and Retail Food Handlers Division, Local 653A, which agreements expired March 1, 1959. After repeated negotiations the representative of said unions and the supermarket operators were unable to reach an agreement. On March 5, 1959, the employees of a supermarket which did not lease space to relator walked out on strike and picketed two stores. No other stores were picketed nor did the employees of other stores refuse to work. On March 6 relator's president was informed that all the supermarkets were going to close and he in turn notified his employees in the affected stores not to report for work on Saturday, March 7, 1959. Also relator laid off twenty-five percent of its working force at its bakery plant because a decrease in sales was anticipated.

Some of relator's employees are members of the Amalgamated Meat Cutters and Butcher Workmen of America, Retail Food Handlers Division, Local 653A, and some are members of the American Bakery and Confectionery Workers Union, Local 222. During the period from March 7 to April 2, when an agreement was reached between the supermarket operators and Local 653 and Local 653A, relator had collective bargaining agreements with both Local 653A and Local 222. There was no labor dispute in progress between relator and any of its employees employed at its bakery plant or at any of its retail bakery stores during the period in question, nor was there any labor dispute in progress during said time between the relator and any other individuals or labor unions.

The employees of relator who were laid off registered for unem-

ployment benefits at local offices of the Department of Employment Security. A claims deputy of the department determined that the employees lost their jobs because of lack of work occasioned by a labor dispute between another employer and his employees and that the claimants were not disqualified from benefits and that benefits paid would be charged to relator's experience-rating account. This determination was affirmed by the appeal tribunal and the commissioner of the Department of Employment Security.

The controlling issue presented is whether the employees were disqualified from receiving benefits under Minn. St. 268.09, subd. 1(6), which provides that an employee shall be disqualified—

"If such individual has left or partially or totally lost his employment with an employer because of a strike or other labor dispute. Such disqualification shall prevail for each week during which such strike or other labor dispute is in progress at the establishment in which he is or was employed, * * *. For the purpose of this section the term 'labor dispute' shall have the same definition as provided in the Minnesota Labor Relations Act. Nothing in this subsection shall be deemed to deny benefits to any employee who becomes unemployed because of a lockout or by dismissal during the period of negotiation in any labor dispute and prior to the commencement of a strike."

We assume that a "labor dispute" existed within the meaning of this section in those supermarkets in which no strike occurred. It is also essential that "before such labor dispute can effectively disqualify it must be in progress at the *establishment at which the claimant is or was employed*." Nordling v. Ford Motor Co. 231 Minn. 68, 76, 42 N. W. (2d) 576, 581, 28 A. L. R. (2d) 272.

In the Nordling case the St. Paul branch of the Ford Motor Company was forced to shut down because of a strike at the company's Rouge plant in Michigan. Employer claimed that the St. Paul employees were disqualified because both plants comprised one establishment. In that case we discussed the criteria to be used in determining whether or not the labor dispute was in progress at the establishment at which the claimant was employed. We held there

that there was no single test or group of tests that were to be exclusively employed to determine whether two separate establishments existed. Rather, we said (231 Minn. 87, 42 N. W. [2d] 587):

"* * * We believe the better rule to be that these factors [referring to functional integrality, physical proximity, and general unity], together with other facts, must be taken into consideration in determining whether the unit under consideration is in fact a separate establishment from the standpoint of employment."

Other facts considered in the Nordling case were that the St. Paul branch of the Ford Motor Company was highly integrated with other units of the company for purposes of efficient management and operation, but was separate in so far as the employees were concerned for the purpose of employment; also that the employees were hired and discharged by the St. Paul manager; that they were members of a local union which had no connection with the locals at other plants, except that all locals were members of the same international; that the seniority rights of the employees extended only to operations at the St. Paul plant; that no showing had been made that any employee of the St. Paul branch could "bump" an employee at any plant of the company except the one at St. Paul; that payment to the Minnesota Unemployment Compensation Fund was made only for employees at the St. Paul plant; and that obviously benefits could be drawn from the Minnesota fund only by employees in the St. Paul branch.

We further said in the Nordling case that employment under the act related to services performed or localized within the state and that the members of the local here had nothing to do with the calling of the strike at the Rouge plant and could do nothing to avert it. The court was of the opinion that (231 Minn. 89, 42 N. W. [2d] 588) "the solution of the problem lies in determining from all the facts available whether the unit under consideration is a separate establishment from the standpoint of employment and not whether it is a single enterprise from the standpoint of management or for the more efficient production of goods."

In the instant case we must determine whether there is any evidence

reasonably tending to sustain the findings of the commission, and if so, such findings will not be disturbed on review. Bowman v. Troy Launderers & Cleaners, Inc. 215 Minn. 226, 9 N. W. (2d) 506.

With reference to the sales employees the appeal tribunal of the Department of Employment Security found that "[e]ach of said claimants was employed by the employer herein as a sales person selling the employer's bakery goods in an establishment of said employer located within the establishment of the owner or operator of said supermarket," and that these claimants were "not disqualified for benefits." We interpret this finding to mean that the supermarkets and relator's outlets therein were separate establishments for the purpose of the unemployment compensation laws.

Here we find a situation where relator's sales employees are distinct and separate from the employees of the supermarkets. They operate under distinct and separate employers. Separate collective bargaining agreements were involved, although some of relator's employees belonged to the same union as the employees of the supermarkets.

Although physical proximity was present here, and relator urges on this basis that there was a single establishment, we do not agree. In the instant case neither establishment is subservient but each is independent of the other even though operated on the same premises. Viewing the facts from the standpoint of employment, as we said must be done in the Nordling case, it seems clear that the place of employment is not decisive but is only one of the many facts that must be taken into consideration. No reason exists why two or more separate "establishments," as that term is used in the statute, may not exist in the same building or on the same premises. That is true even though there may be some integration between them for a more economic operation. The only integration we have here is that in several of the stores the same checkout facilities were used. Aside from that, the operations were entirely separate and distinct.

Under these circumstances, there is no difficulty in holding that the retail outlets constituted separate establishments even though located within the same buildings as the supermarkets, and accordingly the benefits paid would be charged to relator's experience-rating account.

Also there is no specific finding that relator's bakery plant constituted a separate establishment. We believe that it was as a matter of law.

Affirmed.