GERALD M. WEISS AND OTHERS
v. KLEIN SUPER MARKETS, INC.

108 N. W. (2d) 4.

March 10, 1961—No. 38,016.

*Felhaber, Larson & Fenlon* and *Thomas M. Vogt,* for relator.

*Thomas O. Kachelmacher* and *Gerald B. Forrette,* for respondent employees.

*Walter F. Mondale,* Attorney General, and *Joseph A. Coduti,* Assistant Attorney General, for respondent commissioner.

MAGNEY, COMMISSIONER.

Certiorari to review a determination of the Department of Employment Security granting relator's employees unemployment compensation benefits.

Employer, Klein Super Markets, Inc., operates retail food stores in the metropolitan area of St. Paul and Minneapolis. It is a wholly owned subsidiary of Consolidated Foods. On March 5, 1959, it was the owner and operator of 16 food markets in St. Paul and 9 in Minneapolis. Its general office is located in St. Paul. This general office houses the board of directors, the executive vice president and general manager, the advertising department, the merchandising department, the personnel and public relations department, the accounting department, the warehouse department, the director of operations, the maintenance department, the meat supervisors, two district managers for the St. Paul markets, and one district manager for the nine markets in Minneapolis. Each supermarket has a store manager who is under the direct supervision of a district manager. All receipts in cash are deposited in the First National Bank of St. Paul.

Klein had a collective bargaining agreement with Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 653, and the Retail Food Handlers Division, Local No. 653A, AFL-CIO, which was in full force and effect from March 1, 1957, to March 1, 1959. These unions were the collective bargaining agents for all the employees, including claimants, who were employed in the 9 supermarkets in the Minneapolis area. Klein had other collective bargaining agreements with other unions covering the employees in the 16 markets in the St. Paul area.

In January 1959, negotiations were commenced for a new collective bargaining agreement to become effective March 1, 1959. On February 2, 1959, a strike vote was taken at a union meeting held by Locals 653 and 653A authorizing the strike committee to call a strike. Pursuant to that vote, notice of intention to strike was filed with the office of the labor conciliator of the State of Minnesota.

The supermarket operators in the Minneapolis area had organized what was called "Associated Industries," which organization did the negotiating for the chain market operators. During the negotiations, a labor dispute arose, and on March 1, 1959, the "Associated Industries" and Klein, although it was not a member of the organization, entered into an agreement by which all of such supermarket operators agreed that they would shut down operations and close all of their super-

markets in the Minneapolis area in the event a strike was instituted against any one of the operators, including Klein, at any of the supermarkets in the area.

On March 4, 1959, a strike vote was taken of the employees at two of the supermarkets operated by Klein, at which time the employees at each of the two supermarkets voted for calling a strike against these two supermarkets, and on the morning of March 5, 1959, went out on strike. No pickets were placed at any other supermarket operated by Klein or at any of the other supermarkets in the Minneapolis area. On the same day that the strike went into effect, March 5, 1959, letters were mailed by Klein to all the employees at the seven other stores in the Minneapolis area notifying them that, effective at the close of business on Friday night, March 6, 1959, all major food stores, including Klein's, would be closed until further notice. In addition, all store managers gave a similar notice to all their employees. On March 7, 1959, the seven other Klein supermarkets remained closed and were not opened until after the labor dispute had been settled. All the other chain supermarkets did the same thing, and their markets did not open until after the labor dispute had been settled.

The appeal tribunal of the Department of Employment Security, and the commissioner of employment security, on appeal, by his representative, determined that on March 7, 1959, all the employees at the other seven Klein supermarkets lost their employment and became unemployed because of a lockout instituted by Klein at the establishments where they were last employed. It was also found that all the claimants were able and available for work and willing to work during the period of the shutdown. It was therefore held that the claims filed for unemployment benefits by the employees of the seven supermarkets were valid. This determination is here for review.

The Minnesota Employment Security Act in Minn. St. 268.09, subd. 1, provides:

"An individual shall be disqualified for benefits:

\* \* \* \* \*

"(6) If such individual has left or partially or totally lost his employment with an employer because of a strike or other labor dispute.

Such disqualification shall prevail for each week during which such strike or other labor dispute is in progress *at the establishment in which he is or was employed,* * * *. For the purpose of this section the term 'labor dispute' shall have the same definition as provided in the Minnesota Labor Relations Act. Nothing in this subsection shall be deemed to deny benefits to any employee who becomes unemployed because of a lockout or by dismissal during the period of negotiation in any labor dispute and prior to the commencement of a strike." (Italics supplied.)

Section 179.01, subd. 8, defines "Strike" as "the temporary stoppage of work by the concerted action of two or more employees as a result of a labor dispute." Subd. 9 defines "Lockout" as "the refusal of the employer to furnish work to employees as a result of a labor dispute."

It is an undisputed fact that a strike was instituted at two of relator's supermarkets. They were picketed with strike banners. Relator claims that all of the nine stores in the Minneapolis area are part of one establishment; that therefore the strike at two of these stores was a strike at the establishment where they were employed; and that under the law claimants are not entitled to unemployment benefits. Claimants contend that each individual store is an "establishment" under the statute; that therefore the only "establishments" struck were the two stores; and that no strike was in progress at the other seven "establishments." They also contend that they were locked out during the course of a labor dispute. In either case, claimants contend that they are entitled to unemployment benefits.

The leading case on that phase of the unemployment compensation law involved here is Nordling v. Ford Motor Co. 231 Minn. 68, 42 N. W. (2d) 576, 28 A. L. R. (2d) 272. Claimants refer to it as a landmark case. In that case, all employees of the Rouge and Lincoln plants of the Ford Motor Company in Dearborn, Michigan, went on strike. The St. Paul assembly plant of the Ford Motor Company continued to operate as long as it had parts but finally was forced to close down because of lack of parts produced by the Rouge plant. Subsequent to the shutdown of the St. Paul plant, the St. Paul employees filed claims for unemployment compensation benefits. This

court held that the St. Paul plant was a separate "establishment" under the facts and within the meaning of the disqualifying provision of our employment and security law and that the St. Paul employees were entitled to receive the benefits. The opinion fully discussed the outstanding decisions of this country up to that time. We have already quoted the portions of the unemployment compensation law that are involved here.

In the cases decided prior to Nordling v. Ford Motor Co. *supra,* the test of functional integrality, general unity, and physical proximity was used in determining what is a separate establishment within the meaning of the employment security law. Many jurisdictions still follow this test. In the Nordling case, the court held that determination of this question must be based on all the facts relating to the relationship of the employees to the unit of employment rather than on the considerations used in the earlier cases. We stated (231 Minn. 85, 42 N. W. [2d] 586):

"Rather than distinguish the cases on differing facts, we prefer to place decision on the broader ground that we believe that the test of functional integrality, general unity, and physical proximity should not be adopted as an absolute test in all cases of this type. No doubt, these factors are elements that should be taken into consideration in determining the ultimate question of whether a factory, plant, or unit of a larger industry is a separate establishment within the meaning of our employment and security law. However, there are other factors which must also be taken into consideration. * * *

* * * * *

"* * * We believe the better rule to be that these factors, together with other facts, must be taken into consideration in determining whether the unit under consideration is in fact a separate establishment from the standpoint of employment. The St. Paul branch of the Ford Motor Company is highly integrated with other units of the company for purposes of efficient management and operation, but is separate insofar as the employes are concerned for the purpose of employment. The employes are hired and discharged by the St. Paul manager. They are members of a local union which has no connection with the locals

at Dearborn, except that all locals are members of the same international, as are many others not connected with the Ford Motor Company. The seniority rights of the employes extend only to operations at the St. Paul plant. No showing has been made * * * that an employe at the St. Paul branch can 'bump' an employe at the Rouge plant, * * * or anywhere else than at the St. Paul plant."

Other facts set out in the opinion indicate further that the St. Paul branch was a single unit of employment. In disposing of the issue, we said (231 Minn. 89, 42 N. W. [2d] 588):

"We believe that the solution of the problem lies in determining from all the facts available whether the unit under consideration is a separate establishment from the standpoint of employment and not whether it is a single enterprise from the standpoint of management or for the more efficient production of goods."

As the court did in the Nordling case, we will proceed to consider the facts and factors which must be taken into consideration in determining whether the individual supermarket, or the nine-store unit of the Minneapolis area, is a separate establishment from the standpoint of employment.

Collective bargaining contracts between Klein and its employees are negotiated in behalf of Klein by the personnel director, who has his office at the headquarters of the company in St. Paul. Separate collective bargaining agreements are entered into with the employees of the 16 supermarkets in St. Paul and the 9 supermarkets in the Minneapolis area; each area has its own contract. One unit of employment covers the stores in the St. Paul area and another unit covers the stores in the Minneapolis area. A manager of a supermarket has nothing to do with the negotiations for a union contract, nor has he anything to do with its interpretation. Those matters are all handled by the personnel director in the St. Paul headquarters. Obviously, therefore, no retail supermarket has a collective bargaining agreement with its employees. The contract which had covered the employer's two stores that were struck was the one which covered all nine stores in the Minneapolis area and had been negotiated by the personnel director. The store manager has no authority to settle grievances. That is all

done by the personnel director, after grievances have been filed by the local union officials. The store manager has no authority to hire permanent help; that is done by the personnel director. The store manager has authority to hire part-time male help, but he has no authority to hire part-time female help; they are checked, trained, and hired in the main office. Before the store manager may fire an employee for cause, he must get the approval of his district manager and the personnel director. If a part-time employee desires to be employed full-time, the personnel director has the authority to transfer him to full-time status. The store manager has no such authority. When it becomes necessary to lay an employee off for lack of work, the personnel director determines who will be laid off. The personnel director has the responsibility for determining seniorities in conformity with the collective bargaining contract. Seniority is on a storewide basis for new employees who have worked a certain number of hours in a 4-week period. It is on a nine-storewide basis if they have worked 6 months. It is thus on a bargaining unit-wide basis after 6 months, the bargaining unit being the nine Minneapolis area stores. If there is more manpower in a store than the store can afford to maintain, the least senior employees in that store can then "bump" the least senior employees in the other stores in the Minneapolis bargaining unit. Although there is an interchange of personnel among the nine stores in the Minneapolis area, there is no interchange of personnel between the St. Paul and Minneapolis areas. There is no transfer of employees from one bargaining unit to another (except in emergencies). No St. Paul employee may "bump" an employee in a Minneapolis supermarket, or vice versa. If a store manager wants additional help that has seniority, he checks with the district manager. The district manager would then check with the personnel director to see that seniority is not violated. The store manager can make no determination as to seniority. If anyone with seniority is going on or off the payroll, the question must be taken up with the personnel director.

It is apparent from the above that the store manager has practically nothing to do with the employment features of the business. Under the facts and factors here, the individual supermarket cannot be considered a separate establishment from the standpoint of employment under

the rule laid down in the Nordling case. Each employee, however, must be employed in some establishment. It is evident that the nine-store bargaining unit under our facts here is the separate establishment from the standpoint of employment. It cannot be otherwise. The two stores that were struck were not separate establishments. The strike that was called was a strike at the establishment where the claimants were employed, namely, the nine-store bargaining unit in the Minneapolis area.

The commissioner of the Department of Employment Security held that claimants lost their employment and became unemployed because of a lockout instituted by the employer in the other seven supermarkets in the Minneapolis area. Part of Minn. St. 268.09, subd. 1(6), reads:

"* * * Nothing in this subsection shall be deemed to deny benefits to any employee who becomes unemployed because of a lockout or by dismissal during the period of negotiation in any labor dispute and *prior to the commencement of a strike.*" (Italics supplied.)

The employees in the two supermarkets that were struck went out on strike on the morning of March 5, 1959. The seven other supermarkets in the Minneapolis area were closed down by Klein at the close of business on Friday night, March 6, 1959. The strike, therefore, had already been in progress for 2 days when the other stores were closed by Klein. In point of time, the strike was prior.

Reversed.

MURPHY, JUSTICE (dissenting).

In Nordling v. Ford Motor Co. 231 Minn. 68, 42 N. W. (2d) 576, 28 A. L. R. (2d) 272, we held that whether a unit of employment is a separate establishment within the meaning of the disqualifying provision of the employment security law must be determined on the basis of all the facts relating to the relationship of the employee to the unit of employment. In the case before us the relator operated 25 supermarkets in the metropolitan area of Minneapolis and St. Paul. Nine of these were in the city of Minneapolis, and 16 in the city of St. Paul. While the employees of the Minneapolis stores had authority to go on strike, the fact remains that the employees of only two of the stores, by their voluntary action, did strike. The employees of the

remaining stores remained at work. After the employees of the two stores struck, the relator locked out the employees of the remaining seven stores in the Minneapolis area. It seems to me that the record supports the finding of the appeal tribunal that the strike at the two supermarkets in question did not interfere with or impair the operation of the relator at its other places of business.

While there was an integration of the employer's organization and operations with respect to upper-level executive supervision of the various supermarkets, as well as the purchasing of merchandise, advertising, accounting, and certain other operational matters, this integration of the overall operation did not reach down to the separate supermarkets at which the claimants were employed so as to interfere or prevent the continuous operation of the stores at which the strike was not in progress. It appears that the seven supermarkets in Minneapolis which were closed by lockout derived their top-level supervision and general merchandise from the merchandising department in St. Paul, the same source from which the 16 supermarkets operating in the St. Paul area received their general supervision and merchandise. Furthermore, it appears that the nine supermarkets in Minneapolis were located anywhere from several blocks to several miles apart, and the operation of any one of the seven supermarkets closed because of the lockout was in no way dependent upon the continuous operation of either of the struck markets, as each supermarket in the Minneapolis area was operated independently of the others. It seems to me that in the case before us the record supports the finding of the appeal tribunal that each supermarket was substantially operated as a separate business unit and was not so "functionally integrated" or "synchronized" with the other supermarkets as to require that they all be considered part of the same establishment. The term "establishment" as applied to the facts in this case should mean the premises where the claimant was last employed and where his labor was performed and does not refer to each place of business which the employer conducts in its operations.

For the foregoing reasons, I respectfully dissent.

LOEVINGER, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Murphy.