UNITED STATES STEEL CORPORATION, Appellant,

v.

Lonnie BROWN et al., Appellees.

Court of Appeals of Kentucky.

March 21, 1969.

Rehearing Denied June 27, 1969.

W. Bruce Baird, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

Grant F. Knuckles, James S. Wilson, Pineville, Carl Newman, Appalachia, Va., Paul E. Tierney, Dept. of Economic Security, Frankfort, for appellees.

DAVIS, Commissioner.

This is an unemployment insurance compensation case requiring determination of whether the appellees-employees were caused to lose employment by reason of a labor dispute in the "establishment" in which they were employed, as that term is used in KRS 341.360. The Kentucky Unemployment Insurance Commission ruled that the employees were not entitled to compensation, but on appeal the Franklin Circuit Court reversed that ruling and adjudged them to be entitled to unemployment compensation.

We have been favored with excellent briefs by the contending litigants, and from them and the record, we glean the pertinent legal principles and the controlling factual background: The appellant-corporation operates two coal mines at Lynch. Ninety miles away at Corbin, the same company operates a preparation plant which processes all of the coal mined at Lynch from the company's mine. No other coal is processed in the Corbin plant. For convenience we shall refer to the preparation plant as Corbin and the mining operation as Lynch.

It is undisputed that there was a bona-fide labor dispute or strike at Corbin which caused the shutdown of the Corbin plant. It became necessary to discontinue mining at Lynch since there were no facilities at Lynch to handle the coal production which normally was transported daily to Corbin. The Lynch employees who were laid off by reason of the discontinuance of mining there are asserting their entitlement to unemployment compensation pursuant to KRS Chapter 341. It is recognized that these employees are entitled to compensation (with certain exceptions not material here) unless they are foreclosed by the provisions of KRS 341.360, the pertinent portion of which is:

"No worker may serve a waiting period or be paid benefits for any week of unemployment with respect to which:

(1) A strike or other bona fide labor dispute which caused him to leave or lose his employment is in active progress in the *establishment* in which he is or was employed, * * *." (Emphasis added.)

On two occasions we have considered the application of this statute, reaching opposite results in the two cases because of the vastly differing factual situations. Our first case was Ford Motor Company v. Kentucky Unemployment Compensation Commission (1951), Ky., 243 S.W.2d 657, in which we held that the workers at the Ford Assembly Plant in Louisville were not precluded by the statute when they became unemployed as the result of a strike which occurred at the Dearborn Assembly Plant of the River Rouge Group of the Ford Motor Company at Dearborn, Michigan. In Ford Motor, we cited with approval and relied much upon Nordling v. Ford Motor Company, 231 Minn. 68, 42 N. W.2d 576, 28 A.L.R.2d 272. We noted as "unfortunate" that the term "establishment" was not statutorily defined. No legislative definition has been forthcoming since our decision in Ford Motor.

Our other case treating the problem is Snook v. International Harvester Company (1955), Ky., 276 S.W.2d 658, in which we held that certain foundry employees of the company worked in the same "establishment" as did the machine-shop employees who went on strike. Consequently, we held that the foundry workers were barred from unemployment compensation by reason of the statutory proscription.

In Snook, it was pointed out that the foundry and machine shop were housed in separate buildings with separate entrances, although a common entrance could be used. The opinion noted that the foundry and machine shop had separate locker rooms, cafeterias, first-aid stations, and time clocks; and the buildings were in close proximity and enclosed within a common fence. In Snook, we remarked that varying results have obtained in other jurisdictions, depending upon the factual situations and to some extent upon slight variation in statutory wording. We observed that some of the tests applied in determining whether separate plants or activities are conducted in one "establishment" are "(1) functional integration, (2) general unity, and (3) physical proximity." Id. 276 S.W.2d 661. We commented in Snook that "establishment" was used in the statute in its commonly understood sense and had no special or technical meaning. After quoting the definition of "establishment" from Webster's New International Dictionary, Second Edition, we said that the aspect of a fixed geographical place was perhaps the most distinctive component of the definition. There, we analogized that the legislature must have considered the matter of location in its use of the word since KRS 341.-060(2) specifically recognizes that one employing unit may have more than one "establishment" within Kentucky.

The appellant cites and discusses several decisions in which courts of other jurisdictions have concluded that idled workers were within the same "establishment" as striking workers, even though their physical sites of employment were widely separated. Two of these decisions are from the Ohio Court of Appeals. McGee v. Timken Roller Bearing Company, 161 N.E.2d 905, and Adamski v. State, Bureau of Unemployment Compensation, 108 Ohio App. 198, 161 N.E.2d 907. In McGee, it was held that employees who lost work at Zanesville, Ohio, because of a strike in Canton, Ohio, ninety miles away, were precluded from unemployment compensation because they were in the same "establishment." The Ohio court pointed out " * * that the work in Zanesville was utterly dependent upon the supplies being furnished from Canton," and added " * * * the integration between the two plants was such that the Zanesville employees lost their employment temporarily by reason of a labor dispute in the factory, 'establishment, at which they were employed.' A geographical difference of 90 miles seems to us to be of no consequence in view of these undisputed facts." Id. 161 N.E.2d 907.

In Adamski, the same court reached a like conclusion when confronted with a situation in which a labor dispute in a plant in Hamtramck, Michigan, brought on unemployment in the company's operation in Toledo, Ohio, fifty or sixty miles away. The court held that despite state lines the Toledo plant was within the same establishment so as to foreclose unemployment compensation. Appellees suggest that in light of Abnie v. Ford Motor Company, 175 Ohio St. 273, 194 N.E.2d 136, a decision by the Supreme Court of Ohio, McGee and Adamski are substantially unauthoritative. In Abnie, the Supreme Court of Ohio held that the word "establishment" in the unemployment compensation act:

" * * * relates to a distinct physical place of business, and, even though a business composed of separate and independent plants is highly integrated and each unit thereof is interdependent in its operation on the operation of other units, such business does not constitute an 'establishment' within the meaning of the * * * [act]."

In Abnie, a strike occurred in a Ford plant outside Ohio and resulted in unemployment in a related Ohio plant, but the Ohio court did not predicate its decision upon the interstate aspect of the matter.

We shall not undertake an analysis of the many decisions, pro and con, discussed by the parties, although we note some of them for reference purposes. Appellant relies on Spielmann v. Industrial Commission, 236 Wis. 240, 295 N.W. 1; Mountain States Tel. & Tel. Co. v. Sakrison, 71 Ariz. 219, 225 P.2d 707; Basso v. News Syndicate Co., Inc., 90 N.J.Super. 150, 216 A.2d 597; Weiss v. Klein Super Markets, Inc., 259 Minn. 502, 108 N.W.2d 4. Appellees have noted many additional cases, some of which include Park v. Appeal Board of Michigan Empl. Sec. Comm., 355 Mich. 103, 94 N.W.2d 407; In re Ferrara's Claim, 10 N.Y.2d 1, 217 N.Y.S.2d 11, 176 N.E.2d 43; Koll v. Egekvist Bakeries, Inc., 259 Minn. 287, 107 N.W.2d 373; Kroger Company v. Industrial Commission of Missouri, Mo.App., 314 S.W.2d 250.

There are many elements of general unity as to the employment at Lynch and Corbin. Appellants have listed some twelve facets of such unity including such matters as: (a) Actual employment of workers at Lynch and Corbin is accomplished through the personnel department at Lynch; (b) payroll records for both operations are maintained at Lynch; (c) the same collective bargaining agreement, negotiated on a national scale, obtains at Lynch and Corbin even though separate unions locals exist at the two facilities; (d) processing of grievances at Lynch and Corbin follows an identical procedure; (e) operating rules and regulations pertaining to employee conduct at both places are formulated primarily at Lynch; (f) discharge of employees is controlled at Lynch; (g) employees at Lynch and Corbin are in the same unemployment compensation group and have the same account number; (h) vacations for workers at Corbin and Lynch are arranged during a common shutdown period; (i) workmen's compensation claims for either facility are processed at Lynch; (j) employees at each place are eligible for membership in the same burial association; and (k) certain administrative programs relating to employee training, labor relations, public relations, employee hospitalization, savings funds, retirement and pension programs are directed from the main office at Lynch.

Appellant notes that from the employer's standpoint elements of unity are present such as: (a) Lynch and Corbin are in the corporation's same administrative district; (b) the Lynch superintendent and the Corbin superintendent report to the same district superintendent; (c) plant protection for both sites emanates from Lynch headquarters; and (d) there is a common motor pool maintained at Lynch for both operations. There are other administrative functions which point to general unity from a managerial standpoint.

As observed long ago by John Donne:

"No man is an island, entire of itself; every man is a piece of the continent, a part of the main; if a clod be washed away by the sea, Europe is the less, as well as if a promontory were * * *; any man's death diminishes me, because I am involved in mankind; and therefore never send to know for whom the bell tolls; it tolls for thee." Donne, Devotions XVII.

We do not deal here with the broad philosophy so eloquently expressed by Donne. Rather, we construe a statute in light of its purpose and mindful of precedents from this and other tribunals. A fair reading of Snook v. International Harvester Company, Ky., 276 S.W.2d 658, impels the conclusion that physical proximity, considered along with functional integrality and general unity, was a major factor in inducing the court's decision. Wide separation of the units was a prime basis for our decision in Ford Motor Company v. Kentucky Unemployment Compensation Commission, Ky., 243 S.W.2d 657. In both

opinions the court sought to apply a practical layman's construction of the word "establishment." It is doubted that the average person would consider the mines at Lynch as being the same establishment as the preparation plant at Corbin. We need not suggest an arbitrary linear distance which will control the question of proximity. It suffices to say, as we do, that the distance between Lynch and Corbin is so great as to negate the thought that Lynch and Corbin constitute one "establishment."

The judgment is affirmed.

EDWARD P. HILL, MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.