722 A.2d 398

## GIANT FOOD, INC.

v.

## DEPARTMENT OF LABOR, LICENSING AND REGULATION et al.

**No. 201, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 4, 1999.

Roger W. Titus (John A. Roberts and Venable, Baetjer and Howard, LLP, Rockville, Harry W. Burton, Francis X. Coonelly and Morgan, Lewis & Bockius, LLP, Washington, DC, on the brief), for appellant.

Matthew W. Boyle, Staff Atty. (J. Joseph Curran, Jr., Atty, Gen., Lynn M. Weiskittel, Asst. Atty. Gen., on the brief), Baltimore, for appellee, DLLR.

John R. Mooney, Mark J. Murphy and Mooney, Green, Baker and Saindon, P.C., on the brief, Washington, DC, for appellees, Teamster Locals #730, 246, 67 and 922.

Jonathan G. Axelrod, Barbara Kraft, Hugh J. Beins and Beins, Axelrod & Kraft, P.C., on the brief, Washington, DC, for appellees, Teamsters Local 639 and Teamsters Local 355.

Daniel G. Orfield and Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., on the brief, Washington, DC, for appellee, the Undersigned and Members of Bakers Local 118.

Argued before EYLER, JOHN J. BISHOP (Ret., specially assigned) and ROBERT F. FISCHER (Ret., specially assigned), JJ.

ROBERT F. FISCHER, Judge, Retired, Specially Assigned.

In this appeal, Giant Food, Inc. ("Giant"), the appellant, challenges a determination by the Board of Appeals of the Department of Labor, Licensing and Regulation ("the Board of Appeals" or "the Board"), as affirmed by the Circuit Court for Montgomery County. The determination permits truck drivers who engaged in a strike against Giant from December 15, 1996 to January 18, 1997, as well as other workers who participated in a sympathy strike, to collect unemployment benefits. Appellees are the various claimants as well as the Board of Appeals.

## FACTS

Giant operates 174 grocery stores in Maryland, Delaware, Pennsylvania, Virginia, New Jersey, and the District of Columbia. The stores are supplied primarily by way of Giant's two warehouse/distribution centers, one located in Landover, Maryland and the other located in Jessup, Maryland. Giant also operates its own beverage plant and ice cream plant in Jessup, its own dairy in Landover, and its own bakery in Silver Spring.

The evidence presented before the Board of Appeals established that Local 639 of the Teamsters Union represents the truck drivers who drive tractor trailers from the warehouse/distribution centers to the stores and who jockey trailers around inside Giant's facilities. It was local 639 that went on strike against Giant on December 15, 1996. Based on the facts before it, the Board determined that members of the following union locals "actively participated in the Local 639 strike, by refusing to come to work and/or picketing in sympathy with 639":

— Teamsters Local 730, which represents, among others, warehousemen, bakery sanitors, cafeteria and vending workers, ice plant workers, and salvage workers,

— Teamsters Local 67, which represents workers at the beverage plant,

— Teamsters Local 355, which represents truck drivers who deliver pharmaceuticals,

— Teamsters Local 922, which represents, among others, garage helpers and facility maintenance workers,

— Teamsters Local 246, which represents dairy workers, ice cream workers, bakery drivers, and depot workers,

— Local 1486 of the International Association of Machinists, which represents garage mechanics, and

— Local 118 of the Bakery, Confectionery and Tobacco Workers International Union, which represents the bakers at the Silver Spring bakery as well as the in-store bakers.

As a result of the strike, Giant was unable to supply its grocery stores by way of its warehouse/distribution centers. Instead, it used outside wholesalers and suppliers to stock the stores. The ice cream plant, beverage plant, and dairy were shut down for the duration of the strike. The bakery was closed initially but reopened after three weeks, when the bakery workers returned. Giant estimated that it lost about $4 million in manufacturing profits. The Board found that the evidence before it established that, during the period of the strike,

(1) Giant incurred increased costs of approximately $3.9 million [to replace goods it ordinarily manufactured] . . .;

(2) Giant experienced an overall decrease in customer count that ranged from 6% to 10%, depending on how it is calculated . . .;

(3) Giant experienced a decrease in aggregate sales of food and drugs of 14.82% . . . .

The Board nevertheless determined that Giant had failed to establish that a "stoppage of work" necessary to disqualify the strikers from receiving unemployment benefits had occurred. The circuit court affirmed and commented, *inter alia,*: "I cannot say that the Board who is charged with the responsibility of interpreting the law at first is clearly erroneous on the law, that one could not come to that result." The court added:

"[T]he law has always been in administrative proceedings, that the gloss put on a statute by the administrator, unless it is clearly wrong, should be followed."

## ISSUES

Giant contends that the circuit court erred in applying the clearly erroneous standard to the Board's determination and argues:

"I.   The statutory disqualification of an individual from receiving unemployment benefits if 'unemployment results from a stoppage of work ... that exists because of a labor dispute at the premises where the individual last was employed' requires only a substantial curtailment of operations of the employer at the [specific workplace] where the individual applicant for unemployment was last employed and not of overall operations of the employer at all locations, and

. . .

II.   Even assuming that a curtailment of the overall operations of an employer is legally required for the statutory disqualification to apply, the lower court erred in upholding a determination by the Board of Appeals that there was not a substantial curtailment of Giant's overall operations as a result of the strike in question."

## STANDARD OF REVIEW

▇▇   Recently, in *Consumer Protection Division v. Luskin's, Inc.*, 120 Md.App. 1, 22, 706 A.2d 102, *cert. granted,* 350 Md. 280, 711 A.2d 871 (1998), we reiterated:

Our role in reviewing the decision of an administrative agency "is precisely the same as that of the circuit court." ... We, therefore, do not evaluate the findings of fact and conclusions of law made by the circuit court. We review the administrative decision itself, ... and not the decision of the trial court ....

(Citations omitted.)   Thus, whether the circuit court applied the wrong standard of review is of no consequence if our own review satisfies us that the Board's decision was proper.

In light of the expertise of administrative agencies, " 'decisions of administrative agencies are prima facie correct,' ... and 'carry with them the presumption of validity' ...." *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513, 390 A.2d 1119 (1978) (citations omitted). A reviewing court "may substitute its own judgment for that of the agency when resolving questions of law." *Luskin's,* 120 Md.App. at 22–23, 706 A.2d 102. *See also Ramsay, Scarlett & Co., Inc. v. Comptroller of the Treasury,* 302 Md. 825, 837, 490 A.2d 1296 (1985). When the question is one of fact, however, judicial review

> is narrow in scope and requires the exercise of restrained and disciplined judicial judgment. ... Where the agency's findings of fact are supported by substantial evidence, in the form either of direct proof or permissible inference, in the record before the agency, an appellate court may not substitute its judgment, even on the question of the appropriate inference to be drawn from the evidence, for that of the agency. ... Thus, if reasoning minds could reasonably reach the conclusion reached by the agency from the facts in the record, then it is based upon substantial evidence, and the court has no power to reject that conclusion. ...

*Liberty Nursing Center, Inc. v. Dep't of Health and Mental Hygiene,* 330 Md. 433, 442–43, 624 A.2d 941 (1993). The reviewing court also applies the substantial evidence test "when the only question is whether the [administrative agency], having a correct understanding of the law, properly applied the law to the facts." *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.,* 313 Md. 614, 627, 547 A.2d 190 (1988).

## DISCUSSION

### I

### Scope of Stoppage of Work

Section 8–1004 (a) of the Labor and Employment Article provides in pertinent part:

(1) an individual who otherwise is eligible to receive benefits is disqualified from receiving benefits for each week for which the Secretary finds that unemployment results from a stoppage of work, other than a lockout, that exists because of a labor dispute at the premises[1] where the individual last was employed; and

(2) if separate branches of work that usually are conducted as separate businesses in separate premises are conducted in separate departments on the same premises, each department shall be considered a separate premises for the purpose of this subsection.

Md. Lab. and Empl.Code Ann. § 8–1004(a) (1991 Repl.Vol.).

Giant contends that the phrase "at the premises where the individual last was employed" in § 8–1004(a)(1) modifies not only "labor dispute" but also "stoppage of work." Thus, Giant reads § 8–1004(a)(1) to state that an individual is ineligible for benefits if there was a "stoppage of work" at the "premises" where he was last employed. It further interprets "premises" to mean the specific workplace of the individual within the employer's enterprise. Giant concludes that § 8–1004 disallows benefits if there was a stoppage of work at the individual's specific workplace, even if the employer's business as a whole was not significantly affected. Giant points out that, in determining that Giant experienced *no stoppage of work*, the Board looked to Giant's operations as a whole and not to the specific workplaces of the workers who filed claims for unemployment benefits. Giant argues that had the Board looked to

---

**1.** Md. Ann.Code art. 95A, § 6(e) (1985 Repl.Vol.), the predecessor to § 8–1004(a)(1), provided that an individual was ineligible for benefits if his unemployment was "due to a stoppage of work ... which exists because of a labor dispute at the *factory, establishment, or other premises* at which he is or was last employed ...." (Emphasis added.) By 1991 Laws of Maryland, Chapter 8, § 2, the Legislature revised, restated, and recodified article 95A and other laws, creating the Labor and Employment Article. Section 6(e) of Article 95A became § 8–1004(a), and the words factory and establishment were deleted, apparently as surplusage. As stated in the revisor's note, the new language was "derived without substantive change from former Art. 95A, § 6(e) ...." Thus, the word "premises" in the current statute implicitly encompasses a factory or establishment.

the specific workplaces of the claimants—the warehouse/distribution centers and manufacturing plants [2]—it would have necessarily determined that stoppages of work had occurred at those workplaces and that the workers were ineligible for benefits.

Preliminarily, there is some question as to whether Giant's argument is properly before this Court. The appellees contend that Giant failed to argue to the Board of Appeals that the phrase "at the premises where the individual last was employed" modifies "stoppage of work," or that the Board should consider only the specific workplaces of the claimants in determining if there was a stoppage of work. The appellees point out that, in a post-hearing memorandum, Giant urged the Board to "look[ ] to [its] entire operation to determine whether any of its major functions were substantially curtailed by the labor dispute." From this, the appellees conclude that Giant's argument has been waived. *See generally* Md. Rule 8–131(a). Giant counters that it repeatedly urged the Board to consider what happened at the manufacturing plants and the warehouse/distribution centers. It contends that the quoted portion of the post-hearing memorandum was designed to direct the Board's attention to those workplaces and not to convince the Board to look to its overall operations rather than the specific workplaces. Assuming without deciding that Giant's characterization of its argument before the Board is the more accurate one and that the argument is preserved, we are satisfied that the Board properly construed § 8–1004(a)(1) and properly considered Giant's operations as a whole in deciding that there was no stoppage of work.

As the Court of Appeals has made clear, " '[t]he cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the [l]egislature.' " *Hyle v. Motor Vehicle Admin.,* 348 Md. 143, 148, 702 A.2d 760 (1997) (citation omitted). "To determine the legislature's intent, we

---

2. Giant posits that the workplaces of the truck drivers were the warehouse/distribution centers. That issue was not decided below since the Board determined that there was no stoppage of work.

must look ' " " 'first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence.' " ' " *Id.* (citations omitted). "In interpreting a statute, 'we construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme.' " *Id.* at 149, 702 A.2d 760. " 'Punctuation may, when the meaning of the statute is uncertain, be looked to in ascertaining the real meaning, or, if the punctuation gives the statute a reasonable meaning apparently in accord with the legislative intent, it may be used as an additional argument for adopting the literal meaning of the words of the statute thus punctuated.' " *Webb v. Mayor and City Council of Baltimore,* 179 Md. 407, 409–10, 19 A.2d 704 (1941) (citation omitted).

The plain language of the statute convinces us that the Legislature did not intend for the phrase "at the premises where the individual last was employed" to modify "stoppage of work." We conclude that the phrase modified the words "labor dispute," which immediately preceded it.[3] *See Sullivan*

---

3. The Court of Appeals has defined the boundaries of an "establishment" for purposes of determining whether a labor dispute occurred at the establishment where the claimant was last employed. In *Tucker v. American Smelting & Refining Co.,* 189 Md. 250, 55 A.2d 692 (1947), a strike at the appellee's Garfield, Utah copper smelting plant dried up supplies to the appellee's Baltimore refinery, ultimately leading to layoffs in Baltimore. The Court of Appeals was asked to determine whether the Utah smelting plant and the Baltimore refinery were the same establishment, such that the labor dispute in Utah would disqualify the Baltimore workers from collecting unemployment benefits. The Court concluded that the two operations did not constitute one establishment. In addition to pointing to the great physical distance between the operations, the Court noted "the absence of evidence that the Garfield and Baltimore plants, because of 'functional integrality,' 'general unity,' or 'physical proximity,' constitute a single 'establishment.' " *Id.* at 256, 55 A.2d 692.

    As *Tucker* exemplifies, questions regarding the boundaries of factories, establishments, or other premises most often arise when there is no dispute that there was a stoppage of work but there *is* a dispute as to whether the stoppage was due to a labor dispute at the claimant's workplace. Numerous courts in other jurisdictions with provisions similar to § 8–1004(a)(1) have wrestled with such questions, and the

*v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245 (1977) (following "the generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase—particularly in the absence of a comma before the qualifying clause ...").   Section 8–1004(a)(1) was carefully crafted to disqualify from receiving benefits only those individuals whose unemployment resulted from a stoppage of work, where the stoppage of work was caused by a labor dispute that occurred at the premises where the individuals were last employed.   Section 8–1004(b) provides a means for those individuals to show that even though the labor dispute occurred at the premises where they were last employed, they were not involved in the dispute and are therefore eligible for benefits.   As implicitly made clear by § 8–1004(a)(2), § 8–1004(a)(1) does not disqualify individuals whose unemployment resulted from a stoppage of work due to a labor dispute that occurred at premises other than those at which they were last employed.   Giant's reading of the statute to disqualify individuals whose unemployment resulted from a stoppage of work at the premises where they were last employed, due to a labor dispute at those same premises,

---

results have been strikingly inconsistent. *See, e.g., Liberty Trucking Co. v. Dep't of Indus., Labor and Human Relations,* 57 Wis.2d 331, 204 N.W.2d 457, 461–63 (Wis.1973); *Ahnne v. Dep't of Labor and Indus. Relations,* 53 Haw. 185, 489 P.2d 1397, 1401 (Haw.1971); *Ford Motor Co. v. Burson,* 225 Tenn. 486, 470 S.W.2d 941, 944 (Tenn.1971); *In the Matter of Claim of Sierant,* 24 N.Y.2d 675, 301 N.Y.S.2d 604, 608, 249 N.E.2d 455 (N.Y.1969); *Weiss v. Klein Super Markets, Inc.,* 259 Minn. 502, 108 N.W.2d 4, 7–9 (Minn.1961); *Koll v. Egekvist Bakeries, Inc.,* 259 Minn. 287, 107 N.W.2d 373, 376 (Minn.1961); *Kroger v. Industrial Comm'n,* 314 S.W.2d 250, 254–55 (Mo.App.1958); *Ford Motor Co. v. Division of Employment,* 326 Mass. 757, 96 N.E.2d 859, 862 (Mass. 1951); *Ford Motor Co. v. Unemployment Compensation Commission,* 191 Va. 812, 63 S.E.2d 28, 32–33 (Va.1951); *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 62 S.E.2d 209, 214–15 (Ga.1950); *Nordling v. Ford Motor Co.,* 231 Minn. 68, 42 N.W.2d 576, 581–88 (Minn.1950); *Spielmann v. Indus. Comm'n,* 236 Wis. 240, 295 N.W. 1, 3–5 (Wis. 1940); *In the Matter of Claim of DiLella v. Levine,* 48 A.D.2d 91, 368 N.Y.S.2d 300, 301–02 (N.Y.App.Div.1975); *Graham v. Sanders,* 11 Mich. App. 361, 161 N.W.2d 601, 604–07 (Mich.Ct.App.1968); *Basso v. News Syndicate Co.,* 90 N.J.Super. 150, 216 A.2d 597, 600–05 (N.J.Super.Ct.1966).

would leave in limbo the eligibility for benefits of those individuals whose unemployment is the result of a stoppage of work due to a labor dispute at some other premises. Our reading of the statute is consistent with "the remedial nature of unemployment compensation, from which flow the principles that such laws should be read liberally in favor of eligibility ...." *Sinai Hosp. v. Dep't of Employment and Training*, 309 Md. 28, 40, 522 A.2d 382 (1987).

We are convinced, moreover, that the Board properly considered Giant's operations as a whole in determining that there was no stoppage of work. In *Unemployment Benefits and the "Labor Dispute" Disqualification*, 17 U. Chi. L.Rev. 294, 311 (1949–50), commentator Milton I. Shadur addressed the "troublesome" question of "whether benefits are payable during disputes which cause a substantial production drop in one department, though not in the entire plant." Referring specifically to statutes such as § 8–1004(a), Shadur wrote that a majority of the states'

"stoppage of work" statutes provide that if "separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment, or other premises." The implication is that departments which are *not* "commonly conducted as separate businesses in separate premises" do not possess independent status for the purpose of determining disqualification. The test should thus be whether the stoppage was substantial in relation to the *entire* establishment's production, not merely to that of the department in which the dispute occurred. This approach would be harmonious with the view that benefits should depend in part upon the likelihood of success of the employee's strike.

17 U. Chi. L.Rev. at 311–12 (emphasis in original). *See generally* Willard A. Lewis, *The "Stoppage of Work" Concept in Labor Dispute Disqualification Jurisprudence*, 45 J. Urban L. 319, 334–35 (1967) (explaining that where different

branches of work are conducted as separate businesses the measurement of stoppage of work is confined to the separate branch alone).

The Board of Appeals implicitly concluded that Giant's manufacturing plants and warehouse/distribution centers are not "conducted as separate businesses in separate premises." § 8–1004(a)(2). We perceive no error. Giant candidly describes itself as "a vertically-integrated grocery operation." There is no indication that, at the relevant time, Giant's manufacturing plants or warehouse/distribution centers supplied any entity other than Giant. Giant does not contend that its manufacturing plants or warehouse/distribution centers were operated as separate businesses, and directs us to no evidence before the Board that would indicate as much. *Compare Walgreen Co. v. Murphy,* 386 Ill. 32, 53 N.E.2d 390 (Ill.1944) (drug company's warehouse, which supplied company's chain stores as well as various other entities, was separate establishment such that court had only to look to whether there was stoppage of work at warehouse).

Both appellants and appellees direct us to *Employment Sec. Admin. v. Browning–Ferris, Inc.,* 292 Md. 515, 517, 438 A.2d 1356 (1982) *("BFI ").* In that case, the Court of Appeals was asked to determine whether the Board of Appeals properly determined that claimants who had participated in a strike against their employer were eligible to receive unemployment benefits on the ground that there had been no stoppage of work as a result of the strike. The Court adopted the view held by the majority of states as to their own unemployment insurance laws, that the phrase "stoppage of work" in the Maryland Unemployment Insurance Law refers to the "curtailment of the employer's operations" and not to cessation of the worker's labor. *Id.* at 528, 438 A.2d 1356. The Court was not called upon to address and did not address whether, for an employee to be ineligible for unemployment benefits, the contemplated stoppage of work must curtail the employer's operations as a whole or must curtail only the operations at the employee's specific workplace. Indeed, there was no discussion as to whether there was more than one workplace

in *Browning–Ferris*. The Court merely suggested that the curtailment of the employer's operations must be "substantial." *Id.* at 528, 438 A.2d 1356. It recognized "the difficulty of applying a fixed percentage rule to define 'substantial,'" *id.* at 529, 438 A.2d 1356, and observed:

> "Since the mid-fifties, there has been a new emphasis placed upon the term 'operations.' As production increasingly represents less than totality of the employing unit's performance, decreases in business revenue, services rendered, marketing, research, and maintenance, transportation, and construction activities have come to the fore as indicia of substantialness."

*Id.* at 529–30, 438 A.2d 1356 (quoting Lewis, 45 J. Urban L. at 322).[4] The Court looked to the quoted criteria in determining that the Board properly concluded that Browning–Ferris had not experienced a work stoppage. *See* 292 Md. at 530, 438 A.2d 1356.

In determining that a work stoppage occurs when there is a substantial curtailment of the employer's operations, the *BFI* Court relied on a number of decisions from other jurisdictions with statutes similar to our own. *See* 292 Md. at 528–29, n. 13, 438 A.2d 1356. Three, in particular, are significant. In *Continental Oil Co. v. Bd. of Labor Appeals,* 178 Mont. 143, 582 P.2d 1236 (Mont.1978), workers at an oil refinery were awarded unemployment benefits for a period during which they were on strike on the ground that there was no stoppage of work. The employer appealed, arguing that, although produc-

---

**4.** Lewis explains the significance of the use of the word "substantial" to modify curtailment or stoppage of work. He observes that most states, like Maryland, modeled their unemployment compensation statutes after the Social Security Draft Bill, which in turn was modeled after the British Unemployment Insurance Acts. *See* 45 J. Urban L. at 322. *See also BFI,* 292 Md. at 521–22, 438 A.2d 1356. While British courts have determined that a stoppage of work must be "appreciable" before a striking worker will be ineligible for benefits, a majority of the state courts have held that the stoppage must be "substantial." According to Lewis, the appreciable standard "was more concerned with computing the numbers of vacancies occasioned by the labor dispute; the [substantial standard] introduced the variety of factors which bear upon the overall operation of the employer's business." 45 J. Urban L. at 327.

tion levels remained normal, there were stoppages in areas such as "training, planning, budgeting, etc." *Id.* at 1244. The Supreme Court of Montana rejected the argument, explaining: "We do not accept ... the proposition that whenever a labor dispute forces a change in an employer's method of operation or causes a curtailment of some activities within the plant, there per se exists a stoppage of work." *Id.* at 1245.

In *Meadow Gold Dairies—Hawaii, Ltd. v. Wiig*, 50 Haw. 225, 437 P.2d 317 (Haw.1968), the appeals of two dairies that were struck by union workers were consolidated. The Supreme Court of Hawaii affirmed referee determinations that the dairies experienced no stoppages of work, even though production at one dairy declined 18.65% and production at the other declined 17.66%, and both dairies were forced to cease all door-to-door deliveries. Similar to the Court in *Continental Oil*, the Court commented: "We do not accept the proposition that whenever a labor dispute forces a significant change in an employer's method of operation, or necessitates a part of the production process to leave the plant, there exists a 'stoppage of work.'" 437 P.2d at 320–21.

The Supreme Court of West Virginia upheld a determination that there was no stoppage of work at a gas utility in *Cumberland and Allegheny Gas Co. v. Hatcher*, 147 W.Va. 630, 130 S.E.2d 115 (W.Va.1963), *overruled on other grounds*, *Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (W.Va.1982). In that case, the employer was able to supply gas to all of its customers and to generate bills, but was unable to handle routine service orders, read domestic meters, install new service lines, or perform maintenance work. The Court explained:

> ... In some situations, a substantial curtailment of work in a single category or department of the employer's operations might be of such a vital nature as to result in a substantial curtailment of the employer's activities if all categories or departments were of an interdependent nature; while, conceivably, in another and different situation, a complete cessation of work in a single category or department of some incidental or minor nature might produce no

appreciable curtailment of the overall operations of the employer.

*Id.* at 121.

In short, the cases on which the Court of Appeals relied in *BFI* when it adopted the "substantial curtailment" test for determining when there has been a stoppage of work looked to the overall operations of the employer and not to the operations of any specific workplace. As the *BFI* Court indicated, the test itself involves a review of the totality of the circumstances of the employer's operations. *See* 292 Md. at 529, 438 A.2d 1356. *See generally* Thomas J. Goger, Annotation, *Construction of Phrase "Stoppage of Work" in Statutory Provision Denying Unemployment Compensation Benefits During Stoppage Resulting From Labor Dispute,* 61 A.L.R.3d 693 (1975).

In determining that Giant did not experience a substantial stoppage of work and that the striking workers were therefore eligible to receive unemployment benefits, the Board of Appeals did not attempt—and was not asked—expressly to define the premises that it was considering. The Board implicitly looked to the operations as a whole, a course of action it was entitled to take absent evidence that Giant's manufacturing plants and warehouse/distribution centers were operated as separate businesses. *See, e.g., Asher v. C & P Telephone Co. of Md.,* Decision No. 881–BH–84 (Nov. 8, 1984); *Barnes v. AT & T,* Decision No. 891–BH–84 (Nov. 14, 1984). *See also Tracey v. American Totalisator Co.,* Benefit Determination No. 409 (Oct. 21, 1986).

## II

### Substantial Curtailment of Operations as a Whole

In the alternative, Giant argues, in essence, that even if the Board properly considered its operations as a whole, the Board erred in determining that the operations were not substantially curtailed. Giant posits that the Board gave insufficient weight to, *inter alia,* the shutdowns of the manufacturing plants and warehouse/distribution centers, lost man-

ufacturing profits, and increased costs due to the strike.[5] As we have indicated, in reviewing the Board's decision on a question of fact or a mixed question of fact and law, a reviewing court must affirm the Board "if reasoning minds could reasonably reach the conclusion reached by the agency from the facts in the record." *Liberty Nursing Center,* 330 Md. at 443, 624 A.2d 941.

As the Court of Appeals held in *BFI,* 292 Md. at 529–30, 438 A.2d 1356, a flexible balancing test is to be applied in determining if there was a stoppage of work. In addition to declines in production, "decreases in business revenue, services rendered, marketing, research, and maintenance, transportation, and construction activities," as well as any other relevant considerations, must be weighed. *Id.* In accordance with *BFI,* the Board expressly considered that Giant had: closed its manufacturing plants and warehouse/distribution centers; experienced a decrease in aggregate sales of food and drugs of approximately 14.82%; experienced a drop in customer count of from 6% to 10% from the year before; and incurred increased costs of approximately $3.9 million to replace goods it ordinarily manufactured. The Board acknowledged that Giant had presented evidence that it lost approximately $4 million in manufacturing profit, but explained that it did not find the loss to be a significant factor in determining whether a stoppage of work had occurred, apparently in light of the related figures for overall sales losses. The Board pointed out that Giant's stores had remained open and that Giant had managed to keep the stores stocked by using outside vendors. It noted that just ten days before the strike ended Giant's spokesperson had told the press that, although sales were "slightly down," the "recent mild weather and the typical post-holiday dip in sales" could be factors. On the record before us, we cannot conclude that reasoning minds

---

5. For instance, although Giant presented evidence that it incurred approximately $2.2 million in increased transportation costs and lost $500,000 worth of perishable products, the Board made no mention of the evidence in its determination.

could not reasonably have reached the decision reached by the Board.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.