*228 OPINION OF THE COURT
Titone, J.
 Labor Law § 593 (1) provides that claimants will be disqualified from receiving unemployment insurance benefits if they voluntarily separate without good cause from their "last employment” prior to the filing of an unemployment claim. In each of these two cases, the Unemployment Insurance Appeal Board determined that the words "last employment” as used in that section did not refer to the last covered "employment” as that term is defined in Labor Law § 511, but referred to the claimant’s last actual employment, regardless of whether that employment was covered by the Unemployment Insurance Law. Under the circumstances presented, the question of statutory interpretation presented is one of law. for this Court, requiring no deference to the agency determinations below. Having performed that function, we conclude that the term "last employment” refers to covered employment, and that these claimants were disqualified from receiving benefits because they voluntarily separated from their last covered employment without good cause (see, Labor Law § 593 [1]). Thus, we reverse the determinations below that these claimants are entitled to unemployment benefits.
I.

Matter of Gruber

Claimant Gruber graduated from Mount Sinai Medical School in May 1983 and received a medical degree. He was employed as a research assistant for the New York City Department of Health from July 15, 1983 through June 13, 1984. He resigned from the City post to accept a position in a medical residency program at St. Luke’s, which is a teaching hospital accredited by the AMA.
Gruber’s contract with St. Luke’s was executed on March 22, 1984 and covered a one-year term to commence on July 1,1984. However, claimant received permission to begin rendering his services for the hospital at an earlier date, and began making rounds on June 18, 1984. After only several days at the hospital, claimant became emotionally ill and was hospitalized. He never returned to the residency program.
Gruber filed a claim for unemployment insurance benefits. By initial determination, the local unemployment office *229 concluded that Gruber’s "last employment” within the meaning of Labor Law § 593 (1) was with St. Luke’s, that he lost such employment because of illness — a nondisqualifying condition — and thus that he was eligible to receive unemployment insurance. The office determined that claimant’s employment with St. Luke’s was not "covered” employment, and thus charged the City of New York for claimant’s benefits under Labor Law § 581 (1) (e) as claimant’s "last employer.”
Respondent City of New York objected to the ruling, contending that either (1) St. Luke’s should be liable if claimant’s employment with the hospital does not fall within the exclusion to the definition of "employment” under Labor Law § 511 (15), or (2) if claimant’s employment with St. Luke’s is deemed to be "student services” excluded from the definition of covered employment, then the City Department of Health should be deemed claimant’s "last employer,” but claimant should be deemed ineligible to receive benefits because he left that employment with the City to pursue his education — a disqualifying condition. The Labor Commissioner determined that claimant was eligible for benefits. However, after concluding that claimant’s employment at St. Luke’s Hospital was not covered employment, the Commissioner charged the City Department of Health for claimant’s benefits.
Respondent City objected to the Commissioner’s determination. A hearing was then held before an Administrative Law Judge (ALJ) of the New York State Department of Labor. The ALJ concluded that claimant was eligible for benefits and that claimant’s employment with St. Luke’s did not fall under the exception created by Labor Law § 511 (15) because claimant’s service as a medical resident did not constitute "services rendered for an educational institution by a person who is enrolled and is in regular attendance as a student in such an institution.” Thus, the ALJ sustained the City’s objection, and overruled the Labor Commissioner’s determination that claimant’s employment with St. Luke’s was not covered employment. St. Luke’s was thus charged for Gruber’s benefits.
On appeal taken by the Commissioner of Labor and St. Luke’s, the Unemployment Insurance Appeal Board determined that claimant’s services at St. Luke’s did fall within the section 511 (15) exception to the definition of employment, and St. Luke’s was not liable for claimant’s benefits. However, the Appeal Board determined that for purposes of Labor Law § 593 (1), "claimant’s last employment was with St. Luke’s and he left this employment with good cause and under nondisqualify *230 ing conditions.” The Board reasoned that the term "employment” as used in section 593 (1) meant any employment, not only covered employment as defined in Labor Law § 511. Thus, the Board concluded that the City Department of Health was primarily chargeable for claimant’s benefits because that employment was "covered.” The Appellate Division affirmed. We granted the City’s motion for leave to appeal, and now reverse.

Matter of Greene

Claimant Greene was simultaneously employed by the City of New York Department of Health and by the College of Staten Island as a teacher while enrolled in a Master’s degree program at the latter institution. He voluntarily terminated his employment with the City Department of Health on May 24, 1991 to pursue his education. Greene’s last day of teaching was May 30, 1991, although he remained on the payroll through August 1, 1991.
Greene filed an application for benefits, and the local office ruled that he was eligible. The City of New York objected and a hearing was held before a State Department of Labor ALJ. The ALJ found that claimant was eligible for benefits, concluding that "although claimant’s last employment was not in covered employment pursuant to Section 511 (15), it is nevertheless employment which should be considered to adjust the issue of who the last employ[er] [szc] was and under which circumstances the last employment came to an end”. The ALJ concluded that claimant’s employment with the college was his last employment "and although that was not covered employment it is not self-employment and it may be counted to break the disqualification that is apparent for voluntarily] [szc] leaving the municipal employment.”
The City appealed. The Appeal Board adopted the findings of fact and opinion of the ALJ and confirmed the ALJ’s determination. The Appeal Board concluded that Greene’s work as a teacher was not covered employment and should not be considered in computing his benefit rate or experience charges. Nonetheless, the Appeal Board concluded that claimant was eligible for benefits because his "last employment was at school and * * * it ended under nondisqualifying conditions.”
The Appellate Division affirmed. The Court reasoned that "[although claimant’s employment with the College was not 'covered’ employment * * * it was nevertheless sufficient to break claimant’s prior disqualification which resulted when he *231 left his job with the City.” (221 AD2d 789, 790.) The Court noted that "Labor Law § 593 (1) (a) does not specify that a claimant’s 'last’ employment must be 'covered’ employment for purposes of disqualification” {id., at 790.) The Court concluded that since claimant left his actual last employment with the college under nondisqualifying conditions, the Appeal Board’s decision that claimant was eligible for benefits was supported by "substantial evidence.” This Court granted the City’s motion for leave to appeal, and we now reverse.
II.
1. Standard of Review
Judicial review of the determinations of the Unemployment Insurance Appeal Board is limited by statute to questions of law (Labor Law § 623; Matter of Fisher [Levine], 36 NY2d 146, 149-150). Although the proper interpretation of a statute ordinarily presents an issue of law reserved for the courts, this Court has recognized that "[a]n administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47). "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see also, Matter of Industrial Liaison Comm, of Niagara Falls Area Chamber of Commerce v Williams, 72 NY2d 137, 144). When such deference is appropriate, the courts will not disturb the Appeal Board’s interpretation of the provision if it is supported by a rational basis (Matter of Fisher [Levine], 36 NY2d, at 150, supra; Matter of Van Teslaar [Levine], 35 NY2d 311, 318).
By contrast, where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d, at 459, supra). In such circumstances, the judiciary need not accord any deference to the agency’s determination, and is free to ascertain the *232 proper interpretation from the statutory language and legislative intent (Matter of Van Teslaar [Levine], 35 NY2d, at 318, supra; see also Matter of Ferrara [Catherwood], 10 NY2d 1, 7).
In this case, the question of law is whether the words "last employment” contained in Labor Law § 593 (1) refer to the last covered "employment” as that term is defined in Labor Law § 511, or whether in this context the phrase refers to any employment, including those not covered by the article. The Legislature has defined with precision both the underlying purpose of the legislative scheme (Labor Law § 501) and the term "employment” in the Unemployment Insurance Law (Labor Law § 511), and has directed that statutory definitions are to be applied to interpret the article unless the context shows otherwise (Labor Law § 510).
By defining the specific classes of employment that the Law is designed to cover and by directing the manner in which the definitional provisions are to be applied, the Legislature has withdrawn that policy-laden determination from the agency (cf., Chevron U.S.A. v Natural Resources Defense Council, 467 US 837, 843-844). Further, the question of what "employment” means in Labor Law § 593 (1) may be resolved by considering the relevant statutory language, design and purpose (see, e.g., Matter of Ferrara [Catherwood], 10 NY2d, at 7-8, supra). Any "specialized knowledge” or expertise that the Appeal Board may have is thus irrelevant (see, Matter of Heimbach v Metropolitan Transp. Auth., 75 NY2d 387, 390; cf., Matter of Industrial Indem. Co. v Cooper, 81 NY2d 50, 54). Accordingly, contrary to the position of the dissent, there is no "interpretative gap” left to be filled by the agency (see, dissenting opn, at 243), and deference to the agency determinations below is unnecessary (see, e.g., Matter of Ferrara [Catherwood], 10 NY2d 1, 7-9, supra; Matter of Van Teslaar [Levine], 35 NY2d 311, 318, supra; see also, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 666).
2. Construction of Labor Law § 593 (1)
Labor Law § 593 sets forth four circumstances in which a claimant, who has otherwise complied with all eligibility criteria (see, e.g., Labor Law §§ 527, 591 [1], [2]), will be disqualified from receiving unemployment insurance benefits. One such disqualification is voluntary separation from a claimant’s "last employment” without good cause (Labor Law § 593 [1] *233 [a]).[1] Here, we are concerned with the construction of the term "last employment” as used in that section. The question arises in these appeals because the claimants’ separation from their last "covered” employment occurred under Labor Law § 593 (l)’s disqualifying circumstances, but their separation from the "noncovered” employment that they held immediately before filing for benefits did not. Accordingly, whether section 593 (l)’s reference to last employment means last "covered” employment or last employment of any type is critical to determining claimants’ entitlement.
Labor Law § 510 provides that "[w]henever used in this article, the terms defined in this title have the respective meanings set forth herein except where the context shows otherwise” (emphasis supplied). Thus, the statutory definition of "employment” and its exceptions will govern our interpretation of the words "last employment” in section 593 (1) unless the context shows that a different meaning was intended.
Labor Law § 511 (1) (a) defines the term "employment” generally to include any service under any contract of employment for hire, express or implied, written, or oral.” However, the statute goes on to exclude from the definition of "employment” certain specific categories of services or laborers, such as agricultural labor (Labor Law § 511 [6]), golf caddies (Labor Law § 511 [8]), freelance shorthand reporters (Labor Law § 511 [18]), and services for an educational institution by an enrolled student who is in regular attendance (Labor Law § 511 [15]). Employers of persons who provide services in the categories that are excluded from the statutory definition of employment are not obligated to make contributions to the unemployment insurance fund for those services (see, Labor Law § 517 [2] [i]; see also, Matter of Hollis Hills Jewish Ctr. [Roberts], 92 AD2d 1039). Thus, under section 511, the term "employment” is specifically made synonymous with "covered” employment.
Neither the language nor the context of section 593 (1) shows that the Legislature intended to depart from the statutory definition of the term "employment”. The absence of any such indication is especially significant because the Legislature has revealed its intention to include in the term "employment” *234 work not covered by the article by expressly so providing in the text of the particular statutory sections (see, e.g., Labor Law §§ 518, 522, 593 [2]). For example, in Labor Law § 522, the Legislature defined the eligibility requirement of "total unemployment,” as "the total lack of any employment on any day” and expressly provided within the context of that section that "[t]he term 'employment’ as used in this section means any employment including that not defined in this title” (emphasis supplied).[2] Similarly, subdivision (2) of section 593, the provision that concerns disqualification for refusal to accept employment without good cause and that immediately follows the provision at issue here, expressly provides that disqualification of an otherwise eligible claimant would result where the claimant "refuses to accept an offer of employment for which he is reasonably fitted by training and experience, including employments not subject to this article” (Labor Law § 593 [2] [emphasis supplied]). Given that the Legislature used distinct language in subdivision (2) when it intended to include employments other than those included in the statutory definition of the term "employment” (Labor Law § 510), the absence of similar language in the text of the immediately preceding subdivision of the same section indicates that no departure from the statutory definition of that term was intended or implied (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 74, 97), as the dissent suggests (see, dissenting opn, at 237).[3]
Notwithstanding the dissent’s assertions to the contrary, interpreting section 593 (1) to refer only to last "covered” employment does serve to advance the over-all purpose of the legislation, which is to protect certain classes of workers who *235 are involuntarily unemployed "through no fault of their own” (Labor Law § 501; see also, Matter of Ferrara [Catherwood], 10 NY2d 1, 8, supra), and "who, though unemployed, are genuinely in the labor market” (Colin, Unemployment Insurance in New York, at 202 [NYU Inst of Labor Relations and Social Security 1950] [emphasis supplied]). In defining the reach of the system, the Legislature chose to exclude from the recognized labor market certain categories of "workers in specific industries” and "employees who are deemed only casually attached to the labor market” {id., at 135), such as students employed by their educational institutions who are considered to have chosen education rather than employment as their prime objective {Matter of Mitromaras [Roberts], 122 AD2d 368, 369). Where an individual has voluntarily "opted out” of employment in the recognized labor market — as defined by Labor Law § 511 — it makes sense to conclude that the individual is disqualified from recovering benefits, notwithstanding that individual’s subsequent acceptance of work in a sector of the economy that is outside that market. In a statutory scheme that depends upon participation in the legislatively defined labor market, only events occurring within that market are relevant, at least absent a clear indication to the contrary. That a worker who has departed from noncovered employment may be as economically needy as a worker who departs from covered employment is not pertinent because "the unemployment program is an insurance type plan” for dislocated workers in the recognized labor market, "not a 'public relief type plan” for all workers who become unemployed (Matter of Van Teslaar [Levine], 35 NY2d, at 316, supra).
Under Labor Law § 593, eligible status may be restored when the previously disqualified claimant "subsequently work[s] in employment on not less than three days in each of five weeks and earn[s] remuneration at least equal to five times his weekly benefit rate” (Labor Law § 593 [l]-[3] [emphasis added]). Again, nothing in the context of this section indicates that the italicized term "employment” should be given any other meaning than that defined by the Legislature. Thus, for example, a claimant’s eligibility for unemployment benefits may be revived after loss of earlier covered employment without good cause when the claimant is involuntarily removed from subsequent "covered” employment (see, e.g., Matter of Finkel, Nadler & Goldstein [Levine], 46 AD2d 196, supra; Matter of Mittleman [Corsi], 282 App Div 587, supra).
Here, by contrast, claimants never obtained subsequent "employment” after leaving their covered employment and *236 thus, under the scheme devised by the Legislature, did not revive their status as eligible beneficiaries of the unemployment insurance program. Sympathetic as the cases of these claimants may be, they were disqualified from receiving benefits upon their voluntary departure from covered employment, and their eligibility for benefits was not revived because they left their school-related posts without fault.
Accordingly, the order of the Appellate Division in each case should be reversed, without costs, and the matters remitted to the Appellate Division, Third Department, with directions to remand to the Unemployment Insurance Appeal Board for further proceedings in accordance with the opinion herein.
Levine, J. (dissenting). I respectfully dissent. The Unemployment Insurance Appeal Board and the Appellate Division were entirely correct in interpreting the statutory disqualification from entitlement to unemployment insurance benefits for a claimant’s "voluntary separation without good cause from his last employment” (Labor Law § 593 [1] [a] [emphasis supplied]), as not incorporating the student bursary work exclusion from the definition of employment contained in Labor Law § 511 (15).
The New York Unemployment Insurance Law (Labor Law, art 18) was a pioneering social welfare program enacted (by L 1935, ch 468) in response to the hardships of pervasive unemployment during the Great Depression (see, W.H.H. Chamberlin, Inc. v Andrews, 271 NY 1, 8-9, affd 299 US 515). The majority’s overliteral application of all of the statutory definitional exclusions from employment to the disqualification-for-benefits provisions of the Unemployment Insurance Law conflicts with the central statutory purpose of the law to alleviate "[e]conomic insecurity * * * for the benefit of persons unemployed through no fault of their own” (Labor Law § 501 [emphasis supplied]), which the Legislature expressly prescribed as "a guide to the interpretation and application of this article” (id.). Moreover, application of the majority’s interpretation will create anomalies, incongruous results and unnecessary inconsistencies in the administration of the unemployment insurance system.
A.
The key interpretive issue on this appeal is whether the 12 statutory exclusions from the definition of employment contained in Labor Law § 511, plus the several additional exclu *237 sions from that definition set forth elsewhere in the statute, apply to the usage of "employment” or "last employment” in Labor Law § 593, the disqualification section of the statute. There is no principled way to pick and choose among definitional exclusions in interpreting employment or last employment under section 593, and the majority has not attempted to do so.
In addition to the strongly worded direction that the essential protective purpose of the Unemployment Insurance Law shall be the overriding basis of construction of its provisions, the Legislature took the further precautionary measure against formalistic interpretation of the law by providing that "the terms defined in this title have the respective meanings set forth herein except where the context shows otherwise” (Labor Law § 510 [emphasis supplied]). Thus, the drafters of the Unemployment Insurance Law explicitly conveyed their anticipation and approval of implied deviations from and exceptions to the definition of employment, as shown by the context in which that term may be used in the statute.
Examination of the various statutory exclusions from the definition of employment in section 511 and in other provisions of the unemployment insurance article shows (and the majority agrees [see, majority opn, at 233]) that their primary purpose is, through designating excluded categories of employment service, to restrict coverage. That is, these exclusions eliminate classes of employers from liability for unemployment insurance tax contributions, and correspondingly restrict the eligibility of their employees for benefits. Thus, while employment is broadly defined in its general common-law meaning of "any service under any contract of employment for hire, express or implied” (Labor Law § 511 [1] [a]), the statute goes on to provide that the term "employment” does not include such employee services as agricultural labor (Labor Law § 511 [6]); a golf caddy (Labor Law § 511 [8]); a babysitter if a minor (Labor Law § 511 [12]); a freelance shorthand reporter (Labor Law § 511 [18]); a qualified real estate agent (Labor Law § 511 [19]); a duly ordained minister serving a nonprofit organization (Labor Law § 563 [2] [a]); a caretaker at a place of religious worship (Labor Law § 563 [2] [c]); or an elected official of a governmental entity (Labor Law § 565 [2] [a]). The effect of these exclusions from the statutory definition of employment is that persons providing the services in those categories are ineligible for benefits based on that employment, even when they lose their jobs for nondisqualifying reasons, and their employ *238 ers are not required to make unemployment insurance contributions (see, Matter of Hollis Hills Jewish Ctr. [Roberts], 92 AD2d 1039; cf., Matter of Wildcat Serv. Corp. [Ross], 78 AD2d 710).
Contrary to the suggestion of the majority (majority opn, at 234-235), there is a virtually complete absence of coherence between the statutory coverage exclusions and the over-all protective and ameliorative purpose of the Unemployment Insurance Law. Coverage issues generally reflect political, burden/benefit-weighing policy decisions by legislatures, having little if anything to do with the needs of the unemployed. Thus, the agricultural labor exclusion (Labor Law § 511 [6]), found in even the earliest Federal and most State unemployment insurance compensation laws, was attributable to the belief that exemption from additional forms of taxation was necessary to protect, preserve and encourage a fragile and already depressed vital industry (see, Carmichael v Southern Coal Co., 301 US 495, 512). Employment in family businesses was excluded (see, Labor Law § 511 [7]) for reasons of excessive administrative expense (Carmichael v Southern Coal Co., supra, 301 US, at 513).
Still other exclusions (including that contained in Labor Law § 511 [15] at issue here) were incorporated (see, L 1971, ch 1027, § 1) when it was necessary to expand State coverage (in that instance to most nonprofit employers) in conformity with Federal law, in order to avoid loss of credits to New York employers on their Federal payroll taxes for their State contributions, and loss of Federal grants for the administration of the State unemployment insurance system (see, Mem of Dept of Labor, Bill Jacket, L 1971, ch 1Q27, at 19-20). Subsequent Federal mandates were also responsible for the creation of statutory exceptions to certain definitionally excluded services when the employer is a nonprofit organization or governmental entity (see, L 1977, ch 675, § 3 [amending Labor Law § 511 (16)]; preamble to L 1977, ch 675). Moreover, certain exclusions from the definition of employment become statutorily converted to covered employment when an employer elects, with the approval of the Commissioner of Labor, to participate in the unemployment insurance system and pays contributions (see, Labor Law § 561 [2] [a], [b], [c]).
The foregoing patchwork delineations of covered and non-covered employment hardly suggest the existence of some deliberately created, coherent "protected labor market” system, which is the underpinning upon which the majority bases its conclusion that coverage and disqualification issues *239 are actually within the same "context” (see, majority opn, at 235).
Moreover, as the foregoing discussion shows, it is similarly impossible to find any coherent, consistent relationship between the coverage provisions and the purpose and guiding spirit of the law as outlined in Labor Law § 501. Thus, the common issue in these appeals has nothing to do with coverage, it is the unrelated question of the meaning of the phrase "last employment” in the disqualification for benefits section (Labor Law § 593). Unlike the coverage provisions, Labor Law § 593 manifestly has as its underlying rationale and context, the singularly expressed purpose of the unemployment insurance legislation to protect workers who have lost their jobs "through no fault of their own” (Labor Law § 501). Thus, an unemployed worker is disqualified from receiving benefits for "voluntary separation without good cause from his last employment prior to the filing of his claim” (Labor Law § 593 [1] [a] [emphasis supplied]); "los[ing] his last employment prior to the filing of his claim through misconduct in connection with his employment (Labor Law § 593 [3] [emphasis supplied]); and "los[ing] employment as a result of an act constituting a felony in connection with such employment” (Labor Law § 593 [4] [emphasis supplied]). Additionally, an unemployed worker is disqualified from receiving benefits for refusing an offer of reemployment "without good cause * * * including employments not subject to this article” (Labor Law § 593 [2]).
It has long been settled law that where the statutory disqualification expressly relates to a termination of the last employment before filing a claim for benefits, as in the case of a voluntary separation or a claimant’s misconduct (see, Labor Law § 593 [1] [a]; [3]), the focus is exclusively on the circumstances of the ending of the last employment, irrespective of any disqualifying reason for the loss of some prior employment. Thus, in Matter of Mittleman (Corsi) (282 App Div 587), a worker who left one job under a disqualifying condition (voluntary separation without good cause), was nevertheless ruled eligible for benefits after involuntarily being laid off from a temporary position she took shortly thereafter (see also, Matter of Cowan [Catherwood], 17 AD2d 232). And the experience-rated account of the prior employer may constitutionally be charged for that loss of subsequent "last employment,” although the employee voluntarily quit the earlier position (see, Matter of Finkel, Nadler & Goldstein [Levine], 46 AD2d 196, mot to dismiss appeal granted 37 NY2d 740).
*240 Moreover, contrary to the position of the majority, disqualification does not automatically follow when "an individual has voluntarily 'opted out’ of employment in the recognized labor market — as defined by Labor Law § 511” (majority opn, at 235). Leaving one employment for other work generally constitutes "good cause,” and thereby avoids disqualification (see, Matter of Curran [Levine], 50 AD2d 681 [Sweeney, J., dissenting], revd on dissenting mem below 41 NY2d 856). That rule applies even when the new position is not covered employment. Thus, in Matter of Dank (Ross) (80 AD2d 717), the Court held that a psychologist’s voluntary termination of covered employment in this State to take a similar full-time position at a hospital in Israel (clearly not covered employment (see, Labor Law § 511 (5)]), did not require disqualification (see also, Colin, Employment Insurance in New York, at 244 [leaving a job to start a business constitutes good cause]).
Since disqualification issues ordinarily focus on the reasons for the claimant’s loss of last employment and not previous employments, and since a voluntary transfer from covered to noncovered employment is not a ground for disqualification, it was entirely appropriate for the Appeal Board to focus on the reasons these claimants left their last actual employment (even if it was not covered employment), in the context of the disqualification provisions of the statute. Having found that good cause existed for their loss of those last actual employments, the Appeal Board quite properly awarded them the benefits for which they earned eligibility through prior service in covered employment.
Thus, in my view, the Appeal Board’s decisions here are consistent with the general symmetry and purpose of the Unemployment Insurance Law, and certainly, the context of the statutory disqualification provisions. On the other hand, the majority’s interpretation conflicts with the overriding purpose of the law and creates needless anomalies and incongruities in the administration of the unemployment insurance system. To briefly illustrate, under the majority’s interpretation of "last employment,” a worker whose covered employment terminated for nondisqualifying reasons and who then took a job in non-covered employment — such as an excluded position with a nonprofit organization or government entity — would be eligible for benefits even if that last actual employment ended because of the employee’s misconduct or commission of a felony in connection with the job (e.g., a minister embezzling from the congregation, or an official accepting a bribe). Moreover, under the *241 majority’s holding, two workers similarly situated in that (1) they were both terminated from covered employment for disqualifying reasons; (2) they both obtained work in a section 511 definitionally excluded category of employment service; and (3) they were both laid off involuntarily, will receive different disqualification determinations dependent on whether their actual last employment was with a nonprofit organization (see, Labor Law § 511 [16]), or with an employer who elected to provide unemployment insurance coverage (see, Labor Law § 561). Surely, we should avoid, if at all possible, construction of the statute which produces such anomalous and inconsistent results, which have no practical or logical relationship to the stated policy of the unemployment insurance article or the underlying basis of the disqualification-for-benefits section.
B.
Whether one agrees with the majority or the dissent here on the key interpretive issue, I think it is unassailable that, at the least, the Unemployment Insurance Appeal Board could rationally conclude that in the disqualification context, "last employment” is not limited by the statutory exclusions to the definition of employment which are primarily designed to provide standards for coverage. The agreement with the Appeal Board’s interpretation by the Appellate Division — a Court with a long tradition and wide experience in judicial review of the administration of the Unemployment Insurance Lav/— supports the rationality of the Appeal Board’s decision. In my view, the reasonableness of the Appeal Board’s interpretation of last employment under Labor Law § 593 should be sufficient to require affirmance here. Thus, I disagree with the majority’s conclusion that these cases present a question of "pure” statutory interpretation, where a court is as competent as the administrative agency to construe the provisions at issue.
Our decisions regarding judicial deference to the Appeal Board’s interpretations of the provisions of the Unemployment Insurance Law have not been entirely consistent. As the majority has noted (majority opn, at 231-232) in Matter of Van Teslaar (Levine) (35 NY2d 311, 318), we held that deference was inappropriate because the issues presented were "interpretation of the overall policy of the Unemployment Insurance Law and general construction of statutory language”, which were "not materially aided by administrative expertise[,] and there [was] no other reason appearing for the courts to defer to the agency.” We have since recognized, however, that defer *242 ence to the Appeal Board’s rational interpretation is appropriate when "the question, involving policy considerations relating to the intended scope of the statute, 'is [thus] one to the determination of which the Appeal Board may bring to bear its own special competence in carrying out the supervisory authority conferred on it by the Legislature’ ” (Matter of La Mountain [Westport Cent. School Dist. — Ross], 51 NY2d 318, 330 [quoting Matter of Fisher (Levine), 36 NY2d 146, 150]). As the Third Department aptly held in Matter of Wildcat Serv. Corp. (Ross) (supra), a court should defer to the special competence of the Appeal Board when "the evidentiary facts * * * are undisputed and the issue involves policy considerations relating to the intended scope of the statute” (78 AD2d, at 710).
More recently, not only courts but distinguished administrative law commentators have come to recognize the validity of both the explicit and implicit rationales of La Mountain, Fisher and Wildcat Serv. Corp., that statutory interpretation often involves subsets of policy choices which, upon a fair reading of the statute and its legislative history, the legislative body delegated to the agency charged with implementing the overall legislative goals, and that in such cases deference is required. Judicial deference to the agency’s interpretation under these circumstances accords with a rightful
"sensitivity to the proper roles of the political and judicial branches. * * * As Chevron [U.S.A. v Natural Resources Defense Council (467 US 837, 866)] itself illustrates, the resolution of ambiguity in a statutory text is often more a question of policy than of law. * * * When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policymaking authority to an administrative agency, the extent of judicial review of the agency’s policy determinations is limited” (Pauley v Beth Energy Mines, 501 US 680, 696; see also, 1 Davis and Pierce, Administrative Law Treatise § 3.3, at 112-116 [3d ed]).*
Deference in those circumstances will also result in a more coherent, consistent body of interpretation of the statutory *243 provisions than will be accomplished by permitting the courts of this State to make their own policy-based independent interpretations of the statute (see, 1 Davis and Pierce, Administrative Law Treatise § 3.4, at 116-119 [3d ed]).
In my view, the instant cases readily fall within the class of cases where judicial deference to the agency’s statutory construction is warranted. As we have shown, by statutory self-description, the Unemployment Insurance Law is a strongly policy-based body of legislation. We have already recognized that in the Unemployment Insurance Law the Legislature gave the Appeal Board "quasi-legislative” authority (Matter of Fisher [Levine], 36 NY2d, at 150, supra) and policy-choice discretion (Matter of La Mountain [Westport Cent. School Dist. — Ross], supra).
Moreover, here the Legislature deliberately left an "interpretative gap” (Pauley v BethEnergy Mines, supra) in stipulating that statutory definitions are not to be followed "where the context shows otherwise” (Labor Law § 510). Indubitably, determining whether the context shows otherwise here involves policy choices, among which are whether a voluntary transfer to noncovered employment should place an employee at risk of forfeiture of eligibility for benefits previously earned through covered employment, and whether, in light of the central purpose of the legislation, it is appropriate to take into account the circumstances of the faultless loss of noncovered, last actual employment in administering the statute’s disqualification provisions. The Unemployment Insurance Appeal Board, not this Court, should make those choices, so long as in doing so its interpretation is rational and not in conflict with express statutory provisions or definitive legislative history. Since no such conflict has been demonstrated here and the Appeal Board’s interpretation is a rational one, we should affirm.
Chief Judge Kaye and Judges Simons, Bellacosa and Smith concur with Judge Titone; Judge Levine dissents and votes to affirm in a separate opinion in which Judge Ciparick concurs.
In each case: Order reversed, etc.

. Specifically, section 593 (1) (a) provides that "[n]o days of total unemployment shall be deemed to occur after a claimant’s voluntary separation without good cause from his last employment prior to the filing of his claim until he has subsequently worked in employment on not less than three days in each of five weeks and earned remuneration at least equal to five times his weekly benefit rate” (emphasis supplied).

. Thus, any employment, even in an industry that is not covered by the Law, excludes the condition of total unemployment. For example, an unemployed person who has obtained a temporary job on a farm is considered to be employed for purposes of assessing "total unemployment” even though farm work is not "covered” employment (Colin, Unemployment Insurance in New York, at 164 [NYU Inst of Labor Relations and Social Security 1950]).

. The dissent cites both Matter of Mittleman (Corsi) (282 App Div 587) and Matter of Finkel, Nadler & Goldstein (Levine) (46 AD2d 196) for the proposition that in determining whether an employee is disqualified from receiving unemployment insurance benefits, the courts should focus "exclusively on the circumstances of the ending of the last employment, irrespective of any disqualifying reason for the loss of some prior employment.” (Dissenting opn, at 239.) In both Mittleman and Finkel, however, the last employment was covered employment, and thus those cases do not support the dissent’s position that the employment that is last in time — whether or not covered under the Unemployment Insurance Law — is the only employment that is relevant to the determination under section 593 (1).

 For a thorough discussion of the unavoidable necessity of judicial policy making in statutory interpretation to fill gaps or resolve ambiguities, see, Kaye, State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions, 70 NYU L Rev 1, 25-34 (1995).