[726 NYS2d 499]

In the Matter of PERRY ORENS, Petitioner, v ANTONIA C. No-
vELLO, as Commissioner of the Department of Health of
the State of New York, et al., Respondents.

Third Department, June 21, 2001

APPEARANCES OF COUNSEL

*Asher Fensterheim, P. C.,* Tarrytown (*Asher Fensterheim* of counsel), for petitioner.

*Eliot Spitzer, Attorney General,* New York City (*Raymond J. Foley* of counsel), for respondents.

## OPINION OF THE COURT

CARPINELLO, J.

Petitioner's license to practice medicine in New York was revoked after a hearing before a Hearing Committee of respondent State Board for Professional Medical Conduct. The penalty of revocation was affirmed after review of the Hearing Committee's determination by the Administrative Review Board for Professional Medical Conduct. In this CPLR article 78 proceeding to annul the determination, petitioner contends, *inter alia,* that the three-member Hearing Committee, which consisted of two physicians and a physician's assistant, did not include a "lay person" as required by Public Health Law § 230 (6).[1] Respondents contend that the lay person requirement can be satisfied by the inclusion of any person who is not a physician and urges that this interpretation of the statutory provision be given deference by this Court.

> "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. * * * Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459 [citations omitted]).

We conclude that the circumstances of this case fall into the latter category and, therefore, "the judiciary need not accord any deference to the agency's determination, and is free to ascertain the proper interpretation from the statutory language

---

1. This issue was properly preserved by a timely objection prior to the hearing.

and legislative intent" (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231-232).

Public Health Law § 230 (6) requires that a Hearing Committee "consist of two physicians and one lay member." The Legislature has used the term "lay member" or "lay person" in other statutes (*see, e.g.*, General Business Law § 791 [1]; Religious Corporations Law § 95; Soil and Water Conservation Districts Law § 4 [1]; Vehicle and Traffic Law § 542), and it is readily apparent that the meaning of the term is dependent upon the context in which it is used. As noted, respondents contend that "lay member" as used in Public Health Law § 230 (6) simply means one who is not a licensed physician. While this argument is perhaps facially appealing, it does not withstand scrutiny upon our review of the entire statutory scheme, including its legislative history.

Public Health Law § 230 defines the procedure for disciplining certain medical professionals, including both physicians and physician's assistants (*see*, Public Health Law § 230 [7]). Although physicians and physician's assistants are, as respondents point out, licensed under different statutory provisions and have different training and responsibilities (*see*, Education Law arts 131, 131-B), they are nevertheless accorded the same treatment when subject to the Public Health Law § 230 disciplinary process. Under these circumstances, we conclude that the term "lay member," as used in Public Health Law § 230 (6), cannot include a physician's assistant or other licensed medical practitioner whose profession is also subject to the Public Health Law § 230 disciplinary process. This finding is consistent with the legislative history of this statute, which takes us back nearly a quarter of a century.

Public Health Law § 230 was enacted in 1975 in conjunction with legislation aimed at addressing a then-nationwide medical malpractice insurance crisis (*see*, L 1975, ch 109). In the mid-1970s, it was believed that strengthening the disciplinary procedures applicable to physicians might lead to a reduction in the incidents of medical malpractice (*see, e.g.*, U.S. Department of Health, Education and Welfare, 1 Report of Secretary's Commission on Medical Malpractice, at 51 [Jan. 16, 1973]; Governor's Mem approving L 1975, ch 109, 1975 NY Legis Ann, at 226; Mem of State Executive Dept, 1975 McKinney's Session Laws of NY, at 1602). On the Federal level, a Department of Health, Education and Welfare Secretary's Commission on Medical Malpractice investigated the issue of malpractice insurance and issued a comprehensive report on January

16, 1973 which specifically discussed, and made recommendations concerning, the issue of professional discipline as it relates to malpractice. In its report, the Commission found that there was a compelling need for State licensing boards "to move more strongly into the field of discipline" and that the public's "voice should be heard" on such boards since the public had a vital interest in such matters (U.S. Department of Health, Education and Welfare, 1 Report of Secretary's Commission on Medical Malpractice, at 55). Thus, the Commission specifically recommended that "[w]hile laymen obviously cannot sit in judgment on the technical performance of doctors, neither should doctors be the sole judges of the *effects* of their professional performance upon laymen. Both must be heard" (*id.* [emphasis in original]).

On the State level, the New York City Bar Association's Committee on Medicine and Law also investigated the matter and issued a comprehensive report, The Medical Malpractice Insurance Crisis, recommending a number of measures to the Legislature (*see,* The Medical Malpractice Insurance Crisis, 30 Record of Assn of Bar of City of NY 336). In its report, the Bar Association Committee concluded that "the Board of Regents ha[d] not exercised sufficiently its statutory authority to police the profession" (*id.,* at 358) and thus recommended that the Legislature evaluate the effectiveness of that entity to effectively address claims of malpractice. It further recommended that the State Medical Society have a more active role in the disciplinary process of physicians (*see, id.*).

Following these reports, it was originally proposed that the entire responsibility for physician disciplinary matters be transferred to the Department of Health. This proposal, however, drew significant opposition from the Commissioner of Education, as well as the State Board for Medicine. The Commissioner of Education had concerns that the transfer of medical professional discipline from the Board of Regents to the Department of Health would be "contrary to the long-standing policy of the State of New York that licensed professions be subject to disciplinary action by a lay board rather than through a system managed exclusively by members of the profession" (State Educ Dept News, Nyquist Opposes Transfer of Med Profession Discipline, Apr. 15, 1975, at 1, Bill Jacket, L 1975, ch 109). The State Board for Medicine similarly believed that decisions in medical professional discipline should be vested "in the hands of a lay board of consumer representatives" so as to avoid "potential criticism of professional self-

protection" (State Educ Dept News, State Bd for Medicine Releases Statement on Malpractice, Apr. 15, 1975, at 3, Bill Jacket, L 1975, ch 109).

These conflicting views ostensibly resulted in a compromise. Pursuant to the Laws of 1975 (ch 109, § 28), the State Board for Professional Medical Conduct was created consisting of physicians and lay members. It is from this Board that the now three-member Hearing Committee is selected.[2] Upon our review of this history, it seems clear that the purpose of having a lay member on the Hearing Committee is to ensure that those being disciplined are not judged exclusively by members of the same profession. Thus, because a Hearing Committee must include one member who is independent of the profession being regulated, we conclude that the three-member Hearing Committee in this case, which consisted of two physicians and a third licensed professional medical practitioner whose profession is also subject to the Public Health Law § 230 disciplinary process, was not properly constituted.

Relying on *Matter of Wolkoff v Chassin* (89 NY2d 250), respondents contend that the two physician members of the Hearing Committee in this case constituted a quorum and that, because the vote was unanimous, petitioner was not prejudiced by the inclusion of the physician's assistant on the Hearing Committee. In contrast to *Matter of Wolkoff v Chassin (supra)*, however, in this case the full complement of the Hearing Committee participated in the hearing and determination. Having timely objected to the composition of the Hearing Committee prior to the hearing, when the defect could have been cured, petitioner was entitled to a properly constituted Hearing Committee in accordance with Public Health Law § 230 (6) and we decline to speculate on the impact that the improperly constituted Hearing Committee may have had on the final determination. Similarly, there is no basis to conclude that the defect was rendered harmless by the administrative review process.

The appropriate remedy is to annul the determination and remit the matter for a new hearing before a properly constituted Hearing Committee. Although the petition did not expressly request a new hearing, such a request is implicit in petitioner's challenge to the composition of the Hearing Committee, and the petition includes a demand for "such other and

---

2. When initially enacted, the Hearing Committee itself had five members, four physicians and one lay member. It was reduced to a three-member committee in 1984 (*see*, L 1984, ch 1005, § 4).

further relief as the Court may deem just and proper." In light of the remittal for a new hearing, we consider no other issue.

CARDONA, P. J., MERCURE, MUGGLIN and ROSE, JJ., concur.

Adjudged that the determination is annulled, with costs, petition granted, and matter remitted to respondent State Board for Professional Medical Conduct for further proceedings not inconsistent with this Court's decision.