■ In the Matter of the Claim of Luis Adames, Respondent, v New York Jockey Injury Compensation Fund, Inc., et al., Appellants. Workers' Compensation Board, Respondent. [788 NYS2d 726]—

Mercure, J. Appeal from a decision of the Workers' Compensation Board, filed November 22, 2002, which ruled that claimant was a covered employee under the Workers' Compensation Law.

In February 2001, claimant, an exercise rider for a trainer at Belmont Racetrack, injured his ankle as he was dismounting from a horse. Although the New York State Racing and Wagering Board had issued claimant a license authorizing his participation in thoroughbred racing as an exercise rider, the license expired on January 1, 2001, and claimant admittedly had not applied for a new license at the time of the accident. Claimant explained that he had attempted to apply for a new license but such licenses were not yet available and, indeed, the Wagering Board indicated that the New York Racing Association had purchased a new software system, delaying the processing of credentials despite its acceptance of license applications beginning in December 2000. Claimant testified that he ultimately applied for and received a new license in July 2001, after he recovered from his injury. Following a hearing, a Workers' Compensation Law Judge found that notwithstanding his expired license, claimant was a covered employee of the New York Jockey Injury Compensation Fund, Inc. (hereinafter fund; see Racing, Pari-Mutuel Wagering and Breeding Law § 213-a [6]) and authorized treatment. The Workers' Compensation Board affirmed, prompting this appeal by the fund and its workers' compensation carrier. We affirm.

The fund and carrier argue that the Board erred as a matter of law in concluding that an exercise rider with an expired license may be a covered employee of the fund. Initially, we agree with the fund and carrier that this appeal presents a

question of " 'pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent [and] there is little basis to rely on any special competence or expertise of the administrative agency' " (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *cf. Matter of MacMillen v New York State Racing & Wagering Bd.*, 87 AD2d 569, 570 [1982], *affd* 59 NY2d 664, 666-667 [1983]). Nevertheless, we conclude that the Board properly interpreted the relevant statutory provisions in concluding that claimant is a covered employee of the fund.

Racing, Pari-Mutuel Wagering and Breeding Law § 213-a (6) requires the fund to "secure workers' compensation insurance coverage on a blanket basis for the benefit of all jockeys . . . and exercise persons licensed pursuant to [article two or] four of this chapter who are employees under section two of the workers' compensation law." As the parties indicate, Workers' Compensation Law § 2 (4) and (5) provide that jockeys and exercise persons providing services for an owner or trainer at racing association facilities are "conclusively presumed" to be employees of the fund. Further, Workers' Compensation Law § 50 (8) states that to the extent a jockey or exercise person is covered under workers' compensation coverage procured by the fund pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 213-a, the fund's coverage is primary and any other coverage procured by an owner or trainer shall not apply to that jockey or exercise person.

We note that these provisions of the Workers' Compensation Law and Racing, Pari-Mutuel Wagering and Breeding Law § 213-a were added by chapter 346 of the Laws of 1990 and intended to clarify that jockeys and exercise persons are employees of the fund entitled to blanket coverage, prevent the provision of coverage on an individual basis by owners and trainers and speed the receipt of funds by injured jockeys and exercise persons (*see* Mem of Assembly Rules Comm, L 1990, ch 346, 1990 NY Legis Ann, at 185). Were we to accept the argument that the fund's responsibility to provide coverage ceases when its employees are required to be licensed but have not yet obtained new credentials and are nevertheless permitted full access to racing facilities based on expired licenses, the purposes of chapter 346 would be defeated. Denying coverage under these circumstances would subject injured jockeys and exercise persons to a risk that they will not receive adequate compensation on a timely basis. While we are sympathetic to the fund and carrier's argument that the licensing requirement serves an

important purpose, there is no dispute that claimant was required to be licensed and entitled to receive such a license under Racing, Pari-Mutuel Wagering and Breeding Law article 2, which directs the Wagering Board to license, among others, exercise persons participating at race meetings who meet certain criteria except seasonal employees hired to work for no longer than six weeks during the summer race meeting at the Saratoga Racetrack (*see* Racing, Pari-Mutuel Wagering and Breeding Law § 213 [1]; 9 NYCRR 4002.1 [g]).

Nor is there any merit to the argument that requiring coverage of employees who are licensed or required to be licensed renders Workers' Compensation Law § 50 (8) irrelevant. As noted by the carrier and fund themselves, jockeys and exercise persons who work at a place other than a covered facility, among others, would not fall under the category of employees required to be covered by the fund under the Racing, Pari-Mutuel Wagering and Breeding Law, thus triggering the requirement that owners and trainers provide coverage on an individual basis.

Cardona, P.J., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.